SMITH v. STATE.

(In Banc. Jan. 22, 1945.)

[20 So. (2d) 701. No. 35694.]

Henley, Jones & Woodliff, of Hazlehurst, and A. A. Cohn, of Brookhaven, for appellant.

**Greek L. Rice,** Attorney General, by **R. O. Arrington,** Assistant Attorney General, for appellee.

808

· Argued orally by **W. S. Henley** and **A. A. Cohn**, for appellant, and by **R. O. Arrington**, for appellee.

**McGehee, J.,** delivered the opinion of the court.

The appellant, George Smith, was convicted of the crime of manslaughter and sentenced to serve a term of two years in the state penitentiary. The indictment charges that he "wilfully, unlawfully and feloniously" killed J. L. Frizell. The prosecution was conducted under Section 2232, Code of 1942, providing that the killing of

of a human being through culpable negligence shall be manslaughter; and it was shown that Mr. Frizell met his death as a result of being struck by an automobile driven by the defendant.

Since the case must be reversed for a new trial, we shall not set forth the evidence in greater detail or make a more extended comment on the weight thereof than may be necessary for a proper understanding of the facts to which the instructions for the state were sought to be applied.

It is the state's theory that the defendant while traveling south, a short distance beyond the corporate limits of the City of Brookhaven on U. S. Highway 51, in mid-afternoon of a June day, and immediately after having passed a large transport truck going in the same direction, at a time when he was about 250 feet ahead of the truck, left the right side of the road, crossed over the center line of the pavement on a long, straight and level stretch of the highway, where no other vehicles were approaching from either direction, then proceeded at a speed of 40 or 45 miles per hour on a gradual turn diagonally across to the left in a steady course for a distance of 60 or 70 feet until he struck Mr. Frizell, who was then standing at his mail box on the shoulder of the road, located two or three feet from the paved portion thereof, knocked him into the roadside ditch, resumed his position on the right side, and then traveled a short distance further, slowed down his automobile almost to a stop, looked back for a moment toward the mail box, and continued on toward his destination.

On the other hand, the defendant contends that while passing the transport truck, which, according to the undisputed evidence, was approximately 35 feet long, including an 18 foot trailer, and 15 feet high, the driver of the same failed, after proper signal given him, to allow the defendant enough room on the pavement to pass in safety; and that while watching the truck as he passed it he did not see either Mr. Frizell or the mail box at all,

but that having felt the impact when he struck some object on his left with the side of his automobile as he passed the truck and broke his ventilator glass and rear view mirror extending out from the side thereof, he then looked back, saw the mail box standing, and went on his way, not knowing that he had struck and injured any one until he was arrested about two hours later after traveling several miles further on his journey toward Centreville, Mississippi, where he was then going on business.

The testimony of the several witnesses who saw the defendant at the time of and subsequent to his arrest was in conflict as to whether he was then under the influence of intoxicating liquor, or was merely "upset" and "unnerved" by the news that he had caused the death of Mr. Frizell, it being the contention of the defendant in that regard that he had not been drinking, but that after leaving his home at Crystal Springs and before arriving at Brookhaven he had sustained an attack of gall bladder trouble, from which it was shown that he frequently suffered, and that he obtained a room at a local hotel at that place with the intention of summoning a physician, but was able to get sufficient relief from the pain by taking some aspirin tablets to continue on his trip immediately before the unfortunate tragedy occurred.

The truck driver was the only other eyewitness who saw the accident, but he did not claim that the defendant was intoxicated, either at the time he passed his truck or when he was later arrested. On the other hand, his testimony indicated that the defendant was controlling the movement of the automobile as he observed his action. However, a local officer testified that the defendant told him that he had drunk two bottles of beer, which he admitted he had obtained somewhere "down below" there.

In this situation the state was granted two instructions, the giving of which the appellant complains in particular, reading as follows:

"The Court instructs the jury for the State that while it is true criminality cannot be predicated upon mere

negligence or carelessness, yet it may be predicated upon that degree of negligence or carelessness which is denominated as gross, and which constitutes such a departure from what would be the conduct of an ordinarily careful and prudent man under the same circumstances as to furnish evidence of indifference as to the consequences; and if the jury believe from all the evidence in the case beyond a reasonable doubt that the defendant voluntarily and negligently became so intoxicated either by liquor or drugs that his mental and physical condition was so impaired and became so abnormal that he was unable to properly and safely drive and operate the automobile in which he was riding and driving at the time, and that he carelessly and negligently while in that condition drove his car from the west side of the highway across to the east side of the road while driving south on 51 highway at the time and place; and if you further believe from the evidence in this case beyond a reasonable doubt that his actions there constituted that degree of gross negligence or carelessness to the extent that it amounted to culpable negligence as defined in these instructions, and that as a direct and proximate result thereof the defendant George Smith struck, injured and killed the deceased J. L. Frizell, and if you so believe from all the evidence in this case beyond a reasonable doubt, then the defendant George Smith is guilty as charged and the jury should so find.''

''The Court instructs the jury for the State that culpable negligence is that degree of negligence or carelessness which is denominated as gross, and which constitutes such a departure from what would be the conduct of an ordinarily careful and prudent man under the same circumstances as to furnish evidence of indifference to consequences.''

While it was not necessary to either allege or prove that the killing was ''wilfully'' done, within the strict meaning and common acceptation of that term, it was, nevertheless, incumbent upon the state in this character of case

to prove beyond a reasonable doubt that the act of the defendant was unlawful and felonious; that is to say, that he was guilty of such gross negligence on the occasion complained of as to evince on his part a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of his act under the surrounding circumstances as to render his conduct tantamount to wilfulness.

It will be noted that the first instruction, after setting forth the state's theory of a premise on which criminality may be predicated, told the jurors that if they believed from the evidence beyond a reasonable doubt that the defendant was in the state of intoxication described in the instruction, and ''that he carelessly and negligently (not wantonly or recklessly in a manner to evince a disregard of the safety of human life, etc.) while in that condition drove his car from the west side of the highway across to the east side of the road . . . and that . . . his actions there constituted that degree of gross negligence or carelessness to the extent that it amounted to culpable negligence as defined in these instructions'' (meaning the definition set forth in this instruction and in the second instruction), etc., the defendant ''is guilty as charged and the jury should so find.''

The definition of ''culpable negligence'' embodied in these instructions appears to have been taken from this Court's opinions in the cases of Gregory v. State, 152 Miss. 133, 118 So. 906; Shows v. State, 175 Miss. 604, 168 So. 862; Bailey v. State, 176 Miss. 579, 169 So. 765; and Scott v. State, 183 Miss. 788, 185 So. 195. It was first employed in the Gregory case as a quotation without citing the text or decision from which it was taken. If it was intended as a quotation from the note under the leading case of the earlier days, Johnson v. State, 90 Am. St. Rep. 572, wherein Mr. Freeman said, ''Undoubtedly the common-law rule is that criminality may be affirmed of a lawful act carelessly or negligently done. The negligence, however, must be aggravated, culpable, or gross. That

is, it must be such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to evince a disregard for human life or an indifference to consequences. The negligence in such case supplies, in a measure, the direct criminal intent'', it omits the principal element of the offense, ''a disregard for human life.'' Most assuredly, manslaughter should not be predicated on an indifference to just any consequences, since a motorist may be indifferent as to whether in lawfully passing another vehicle he may run onto the sodded shoulder of the road, damage a tire, strike a chicken or pig, or encounter some other consequence of a trivial nature as compared to a disregard to the safety of human life—a necessary factor in every crime of manslaughter through culpable negligence.

Moreover, the statute here involved does not say that one shall be guilty of this crime where a homicide results from ''a lawful act carelessly or negligently done,'' even though it was true that a criminality could be affirmed of such an act at common law. Nor does our statute predicate the offense of manslaughter on ''gross'' negligence, either by its terms or within what a jury of laymen may understand the term gross negligence to mean. On the other hand, the legislature in enacting this statute declaring a homicide to be manslaughter when the killing is caused by the negligence of another used alone the stronger of the words ''aggravated'', ''culpable'' or ''gross'' to supply the criminal intent as a necessary ingredient of a crime.

When we look to the definition used in some of our decisions and employed by the prosecuting attorney in the instant case in characterizing culpable negligence as ''that degree of negligence or carelessness which is denominated as gross negligence and which constitutes such a departure from what would be the conduct of an ordinarily careful and prudent man under the same circumstances as to furnish evidence of indifference to consequences,'' the question arises of how much ''evidence'' is to be fur-

nished, that is whether slight or abundant, and as to what "consequences," whether those involving danger to human life or consequences of a less serious nature incident to a negligent act. The phrase "indifference to consequences" when used in an instruction defining culpable negligence should clearly inform the jury that what is meant is an indifference under circumstances involving danger to human life—the equivalent to criminal intent.

If we were correct in holding, in keeping with the trend of modern texts and decisions, in the recent case of Cutshall v. State, 191 Miss. 764, 4 So. (2d) 289, 291, that this definition "imports conduct reasonably calculated to injure others and creating notable and apparent potentialities for the causing of death or great [bodily harm] to others," then why should the jury not be so informed when passing on the liberties of the citizen?

In the Cutshall case, the Court also said that "the driving of a vehicle by one who is under the influence of intoxicating liquor is a misdemeanor. Section 49, ch. 200, Laws 1938. The driving of an automobile while in this condition is therefore per se negligence. Williams v. State, 161 Miss. 406, 137 So. 106. But this does not mean that such evidence constitutes a prima facie case of manslaughter. . . . Although a jury may find that the conduct of the operator constitutes gross negligence, the violation of the statute is not culpable negligence per se within the definition of Section 1002 (which is the same as Section 2232, Code of 1942, here involved)." The same may be said in regard to the act of the defendant when he "carelessly and negligently . . . drove his car from the west side . . . to the east side of the road."

In Blashfield's Cyclopedia of Law and Practice (Perm. Ed.), sec. 5388, p. 109, where manslaughter by criminal negligence is discussed, it is stated: "The general rule is that negligence, to become criminal, must necessarily be reckless or wanton and of such a character as to show an utter disregard of the safety of others under circum-

stances likely to cause injuries," citing numerous decisions.

In other words, the gist of the offense of involuntary manslaughter with a motor vehicle is criminal negligence, which must be wanton or reckless under circumstances implying danger to human life. People v. Burgard, 377 Ill. 322, 36 N. E. (2d) 558; People v. Hansen, 378 Ill. 491, 38 N. E. (2d) 738; People v. Herkless, 361 Ill. 32, 196 N. E. 829; State v. Melton, 326 Mo. 962, 33 S. W. (2d) 894; Cain v. State, 55 Ga. App. 376, 190 S. E. 371; Potter v. State, 174 Tenn. 118, 124 S. W. (2d) 232; and Cannon v. State, 91 Fla. 214, 107 So. 360. It must be negligence so wanton or reckless as to be incompatible with a proper regard for human life. 26 Am. Jur. 299. It must be shown that a homicide was not improbable under all the facts existing at the time, in order to sustain a conviction of criminal homicide attributable to negligence. 5 Am. Jur. 927. Or, as stated in 40 C. J. S., Homicide, section 62, p. 926, "it is ordinarily required that the negligence on which involuntary manslaughter may be based must be of a gross or flagrant character, such as would show wantonness or recklessness, or would evince a reckless disregard of human life or the safety of others, or indifference to consequences, equivalent to criminal intent . . . "

Under the state's instructions in the instant case the jury was not required to believe from the evidence that by the exercise of proper care the defendant should have either seen or have reasonably anticipated that some person would probably be standing in close proximity to the pavement on the occasion complained of, in order for his conduct to evince a wanton disregard for the safety of human life. While a motorist is required to anticipate the presence of others on the highway, yet there are circumstances under which his failure to do so would amount to mere negligence.

But whether or not the objection last above mentioned would be sufficient to justify a reversal of the case, it is unnecessary to decide in view of our conclusion that in

the light of experience with automobile accident cases the proper administration of justice requires a restatement of the law as to what constitutes criminal negligence to the end that juries may be more fully advised as to what proof is necessary to raise the conduct of the accused from the level of ordinary negligence to criminal guilt. In doing so, we do not go too far beyond what is already required by our decisions in declaring the character of negligence applicable if this were a civil suit seeking recovery of punitive damages on the same state of case; nor than is required in suits to recover statutory penalties—where in either case the punishment inflicted or the penalty awarded can be satisfied in dollars and cents instead of by a forfeiture of human freedom. Vicksburg Railroad Power & Mfg. Co. v. Marlett, 78 Miss. 872, 29 So. 62; Yazoo & M. V. R. Co. v. Mullen, 158 Miss. 774, 131 So. 101; Murphy v. Seward, 145 Miss. 713, 110 So. 790; Seward v. West, 168 Miss. 376, 150 So. 364; Board of Mississippi Levee Commissioners v. Anderson, Clayton & Co., 171 Miss. 316, 157 So. 531; E. L. Bruce Co. v. Edwards, 192 Miss. 1, 3 So. (2d) 846; and Hays v. Lyon, 192 Miss. 858, 7 So. (2d) 523.

Nor is there anything new in the fact that we are here strengthening the requirements for a proper definition of culpable negligence, as compared with that heretofore given in our decisions. This Court in the case of Sims v. State, 149 Miss. 171, 115 So. 217, 219, quoted with approval, as a general guide to a correct conclusion as to what constitutes culpable negligence, a definition in 1 Words and Phrases, 2nd Series, p. 1174, 10 Words and Phrases, Perm. Ed., in the following language: ''The omission to do something which a reasonable, prudent, and honest man would do, or the doing of something which such a man would not do, under the circumstances surrounding the particular case''—a good definition of simple negligence, which the Court again quoted, but enlarged upon in the Gregory case. But we found it necessary in the recent case of Cutshall v. State, supra, to

further qualify the definition contained in the Gregory case and the decisions rendered subsequent thereto. And it may be said in justice to the trial courts and prosecuting attorneys that in their efforts to properly instruct the juries they have been without a workable rule to follow, if a jury of laymen is to be expected to observe the shadowy line of demarcation between culpable negligence and plain ordinary negligence under the definition heretofore adhered to. In other words, culpable negligence should be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the wilful creation of an unreasonable risk thereof.

The definition found in Scott v. State, 183 Miss. 788, 789, 185 So. 195, and the previous cases which it followed is no more than one of gross negligence. Such definition, as applicable to charges of manslaughter, has been taken from pronouncements dealing with situations wherein the potential dangers to human safety in the act or acts charged were or should have been apparent. To such situation, the definitions there approved are perhaps not far out of line. But these definitions, in the abstract, when applied to the conduct of drivers upon country highways have led to verdicts in such cases which we have been unable to approve. Hence we are now restating the requirements which should be embodied in the instructions to the jury, but without undertaking to formulate an instruction that would be suitable for use in every case arising under the statute here involved. We merely announce herein the legal requirements for such an instruction, and we think with sufficient fullness to enable the drafting of the proper instruction or instructions in the light of the facts of each particular case.

What in a given situation would be culpable negligence, that is to say, a wanton and flagrant recklessness in disregard of the safety of human life or limb might be no negligence at all in another and a different situation. That which would be no more than simple negligence or

none at all when done on a broad rural highway might be culpable if done on a crowded thoroughfare. It is palpably unjust therefore, and is not the law, that the same abstract definition shall be given to a jury in either case and in all cases as if there were no difference in them. The greater the danger, the greater is the degree of care required, as has been repeatedly announced in the general law of negligence. In cases of automobile accidents on rural highways, it may often be the case that there is little to induce a prevision of any immediate danger so that the driver of the automobile in such situations ought not be denounced as a felon unless the evidence is sufficient upon which the jury may safely find, beyond a reasonable doubt, that his negligence was of such a flagrant character, so wanton or reckless as to clearly disclose a callous disregard for the safety of human life or limb, wherever, within reach, the victim might chance to be. See text and cases 40 C. J. S. Homicide, section 62, pp. 926, 927.

As hereinbefore stated, it should be kept in mind that the statute does not declare upon gross negligence, but upon culpable negligence. Under the doctrine of strict construction of criminal statutes, it is not within the rightful province of the Court to strike out of the statute the term culpable negligence and substitute therefor the term gross negligence, and thereupon apply what would scarcely sustain a judgment in a civil case for punitive damages to a criminal case making it manslaughter should death result, or assault and battery with intent to commit manslaughter should death not result. In order then to give the term culpable negligence in the statute its proper setting instead of harking back to gross negligence, the term culpable negligence should be construed to mean a negligence of a higher degree than that which in civil cases is held to be gross negligence, and must be a negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life; and that this shall be so

clearly evidenced as to place it beyond every reasonable doubt.

Under the state of the proof as to how the accident occurred and as to what may be inferred in regard to the defendant's condition at that particular time, and because of the objections to the instructions herein pointed out, we reverse the case for a new trial.

Reversed and remanded.