PERRETT *v.* JOHNSON.

No. 43510          May 24, 1965          175 So. 2d 497

*Arrington & Arrington,* Hazlehurst, for appellant.

*Joe N. Pigott,* McComb; *Armstrong & Hoffman,* Hazlehurst, for appellee.

Jones, J.

This case arises from an automobile accident which occurred July 22, 1963, on Highway No. 55, an interstate four-lane highway presently completed from Jackson nearly to Crystal Springs. The highway has a median strip between the two southbound lanes and the two northbound lanes. While traveling south, appellant struck from the rear a car occupied by Jones B. Johnson, which was traveling south ahead of the appellant's car. As a result of the collision Johnson died. A suit for the wrongful death of deceased was filed in the Circuit Court of Copiah County, Mississippi, by the deceased's widow and children. After trial, judgment was rendered for the sum of $23,000. There was no appeal from this judgment.

About a week after the judgment was rendered, appellant filed voluntary bankruptcy proceedings. A writ of garnishment was issued against the appellant's employer, who answered admitting indebtedness; and the appellant made his appearance and pleaded his bankruptcy discharged as a full and final discharge of the judgment debt. After a hearing on the issue, the circuit judge held that the judgment had not been discharged and gave judgment on the writ of garnishment against the appellant's employer for the amount due by him to the appellant. The case comes here on appeal and we affirm the decision of the lower court.

Section 17a(2) of the Bankruptcy Act provides: "A discharge in bankruptcy shall release a bankrupt from

all of his provable debts whether allowable in full or in part, except such as . . . liabilities . . . for wilful and malicious injuries to the person or property of another. . ." 11 U. S. C. A. § 35(a) (Supp. 1964). The question presented here, therefore, is whether the injury to the decedent was a willful and malicious injury within the meaning of section 17a(2) of the Bankruptcy Act.

A more detailed discussion of the facts as pertinent to this issue. It was shown that after the collision, the appellant's automobile came to a stop 471 feet from the place of the accident, traveling on the highway after the accident 336 feet and continuing after it left the paved surface of the road, for an additional 135 feet. Decedent's car traveled 384 feet after impact, 180 feet on the highway and 204 feet beyond the highway, turning over, and finally coming to rest. After the accident a portion of a bottle of vodka was found in appellant's automobile. Appellant admitted having taken a drink of vodka that afternoon. The accident occurred about 9:00 or 9:30 P.M. Although decedent's car was traveling on the proper side of the highway with a lane to the left in which another car could easily pass, appellant's car struck the car in which decedent was riding. The pictures of the automobiles which were introduced showed signs of a terrific impact, appellant's car being damaged in the front about the center, and decedent's car being heavily damaged in the rear more to the center and right of the center. The acts of negligence charged were:

a. Defendant was operating his Pontiac automobile at an excessive and unlawful rate of speed.

b. Defendant failed to keep his Pontiac automobile under proper control.

c. Defendant operated his Pontiac automobile while under the influence of intoxicating liquor.

d.   Defendant failed to apply the brakes and reduce the speed of his Pontiac automobile when it became apparent, or by the exercise of reasonable care should have been apparent, that the defendant's Pontiac automobile was about to strike the rear of the Chevrolet in which the said Jones B. Johnson was a passenger.
e.   Defendant failed to exercise reasonable care in avoiding the collision when the defendant had the last clear chance to avoid such collision.

The negligence of the defendant as stated above was the sole, direct and proximate cause of the collision of the automobiles and the injuries producing the death of Jones B. Johnson was the gross, wanton and reckless negligence of the defendant and that the deceased Jones B. Johnson and his widow and children sustained injuries and damages as the direct and proximate result of said negligence of the said defendant as more particularly described hereinafter. . .

Appellant claimed he was traveling at 60 or 65 miles per hour at the time of the accident. The speed limit was 70 miles per hour. Appellant testified that he remembered nothing after the accident. He said that before the accident he was traveling in the lefthand southbound lane and he saw the other car. Just as he started to pass, the decedent's car turned sharply across the road. He tried to go around the car on the righthand side but hit it. Of course there was a conflict as to appellant's version of the case. The jury found in favor of the appellees.

At the November 1963 term the appellant was indicted, it being charged that he "did unlawfully, feloniously and by culpable negligence of said defendant kill and slay one Jones Johnson, a human being." To this indictment the appellant first entered a plea of not guilty. Later with permission of the court the plea of not guilty was withdrawn and a plea of guilty entered. Appellant says that his plea was changed on the advice of the

attorney then representing him, who told him that if he went ahead and pleaded not guilty and was found guilty, he could get a maximum of 20 years in the penitentiary, but that if he changed his plea to guilty, he could get off with a two-year probation.

After hearing the argument concerning the bankruptcy discharge of the debt, the circuit judge, on July 31, 1964, entered his order in which he held: "The aforesaid debt due the plaintiff, Mrs. Jones B. Johnson, by the defendant, James F. Perrett, is not dischargeable under the Bankrupt Act (11 U. S. C. A. Par. 35 (2)) same being based on a willful and malicious injury to said plaintiff and said debt is in full force and effect." The order, of course, was made after the Judge rendered his opinion in which he said and held with reference to the civil case and the garnishment:

. . . but the Court did commit an error in granting to the defendant Perrett an instruction based on contributory negligence. They were instructed to the effect that if plaintiff's, the Johnson's car, had swerved in front of him without notice or warning the verdict was to be reduced according to the negligence of the driver of the Johnson car. That instruction should not have been given, because contributory negligence had not been plead as a defense, but nevertheless it was granted and the jury in the face of that instruction brought in a verdict for $23,000. I think that the amount of that verdict, together with the plea of guilty in the criminal case, shows beyond a doubt that there was wilfullness and malice within the meaning of this bankrupt act and that the jury intended to and did include punitive damages in its verdict and I am going to so hold and hold that the verdict is not discharged by the bankruptcy proceedings.

The question of the degree of negligence necessary to support a conviction of manslaughter in the death of

a person by the driving of an automobile was involved in *Smith v. State,* 197 Miss. 802, 20 So. 2d 701 (1945). Speaking for the Court, Justice McGehee said:

> While it was not necessary to either allege or prove that the killing was "wilfully" done, within the strict meaning and common acceptation of that term, it was, nevertheless, incumbent upon the state in this character of case to prove beyond a reasonable doubt that the act of the defendant was unlawful and felonious; that is to say, that he was guilty of such gross negligence on the occasion complained of as to evince on his part a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of his act under the surrounding circumstances as to render his conduct tantamount to wilfulness . . .

> In Blashfield's Cyclopedia of Law and Practice . . . where manslaughter by criminal negligence is discussed, it is stated: "The general rule is that negligence, to become criminal, must necessarily be reckless or wanton and of such a character as to show an utter disregard of the safety of others under circumstances likely to cause injuries," citing numerous decisions.

> In other words, the gist of the offense of involuntary manslaughter with a motor vehicle is criminal negligence, which must be wanton or reckless under circumstances implying danger to human life. (Numerous citations). It must be negligence so wanton or reckless as to be incompatible with a proper regard for human life. . . . It must be shown that a homicide was not improbable under all the facts existing at the time, in order to sustain a conviction of criminal homicide attributable to negligence. . . . Or, as stated in 40 C. J. S., Homicide, section 62, p. 926, "it is ordinarily required that the negligence on which involuntary manslaughter may be based must be of a

gross or flagrant character, such as would show wantonness or recklessness, or would evince a reckless disregard of human life or the safety of others, or indifference to consequences, equivalent to criminal intent. . . ." (197 Miss. at 811, 814-15.)

The determination whether an injury resulting from an automobile accident is "willful and malicious" within the meaning of section 17A(2) of the Bankruptcy Act has caused the courts considerable difficulty.

What constitutes wilful and malicious injury growing out of an automobile accident, within the provision of the Bankruptcy Act relating to discharge, depends in each case upon the particular facts. Whether a claim arising out of an automobile accident survives a discharge in bankruptcy because it involves a wilful and malicious injury depends upon the facts and circumstances surrounding the injury and the specific acts of misconduct charged against the tortfeasor. It is clear, however, that liability for simple negligence in the operation of a motor vehicle which results in an injury to another is not excepted from a discharge in bankruptcy as a wilful and malicious injury. Neither reckless nor unlawful operation of the vehicle brings liability for an injury resulting therefrom within the exception, unless the conduct appears to have been so in disregard of consequences to another that it can be said to have been wanton as well as wilful. Malice, or its equivalent, is essential for an exception from a bankruptcy discharge, but if the conduct causing the injury, though not done with actual malice, is wilful and wanton, done intentionally, and in wilful disregard of known duty, that is sufficient, according to many decisions, to categorize it as "malicious" within the intendment of the Bankruptcy Act. (9 Am. Jur. 2d Bankruptcy sec. 788 1963).)

██ █ In order to fall within the exception to bankruptcy discharge, the injuries must have been both willful and malicious. ██ █ The word "willful" means "nothing more than intentionally doing an act which necessarily leads to injury." 1 Collier, *Bankruptcy* § 17.17, at 1631 (14th ed. 1964). ██ █ A "malicious" act, under this provision, is an "unlawful or wrongful act done intentionally without just cause or excuse." 9 Am. Jur. 2d *Bankruptcy* § 786, at 588 (1963).

> The word 'wilful' means intentional or deliberate. It is not, as used in the exception, restricted to the meaning which it may have in criminal prosecutions. Any act that is done unlawfully and maliciously is necessarily wilfully done.

> A "malicious" act, within the meaning of the exception, is an unlawful or wrongful act done intentionally without just cause or excuse. While a wilful act is not a malicious act unless the intent is to do harm or to act in utter disregard of another's rights, it is not necessary that one be incited by a malevolent or malicious motive, such as is required to give color to a criminal act, in order that his act may be malicious within the meaning of the exception. "Wilful and malicious" is equivalent in meaning to "wilful and wanton." It is sufficient to supply the element of a malicious injury if the act be such that malice may be implied therefrom. An act may be wilful and malicious even in the absence of hatred or ill will, and it is not necessary, in order to invoke the exception, to show special or express malice. (9 Am. Jur. 2d Bankruptcy sec. 786 (1963).

In *Wegiel v. Hogan,* 28 N. J. Super. 144, 100 A. 2d 349, 353 (1963) it was stated that:

> "Wanton and reckless conduct," that is, acts done with an utter disregard of rights and safety of others, may constitute "willful and malicious injury" to person and property of another within meaning of Bank-

ruptcy Act provision exempting from discharge liabilities of bankrupt for "willful and malicious injury" to person or property of another.

In *Breeds v. McKinney*, 171 Ohio St. 336, 170 N. E. 2d 850 (1960), defendant unsuccessfully pleaded discharge in bankruptcy as a defense to a proceeding by a judgment creditor in aid of execution of a default judgment in an automobile accident case in which defendant had been alleged to have "carelessly, negligently, recklessly, wilfully and wantonly" while under the influence of intoxicating liquor and while driving at an unlawful speed crossed over the center lane of the highway and collided with the plaintiff. It was held that plaintiff's injuries had been willfully and maliciously caused within the meaning of the Bankruptcy Act.

In *McClure v. Steele*, 326 Mich. 286, 40 N. W. 2d 153 (1949), a discharge in bankruptcy was not a bar to the collection of a judgment in which there was a stipulation between the parties and the personal injuries occasioned to the plaintiff's wife by the car of the defendant being driven over the curb and sidewalk were the result of the defendant's "wilful and wanton negligence." It was held tantamount to an admission that the defendant was guilty of causing "wilful and malicious injuries to the person or property of another" within the meaning of the exception in the Bankruptcy Act.

And *in re* Papale, 17 F. Supp. 146 (1936), a debt against a father resulting from a judgment for his thirteen year old son's wilfully and maliciously putting out the eye of a playmate with a pellet from an air rifle was held not dischargeable in bankruptcy, where the bankrupt knew that his son used the air rifle indiscriminately in shooting at cats, birds, and playmates.

██ █ In this case the circuit judge heard the evidence, and after considering the matter, he held that the judgment was the result of wilful and malicious injuries within the meaning of the Bankruptcy Act. We

find nothing in the record which would justify us in saying that the lower court was in error, and the case is therefore affirmed.

Affirmed.

All *Justices* concur.