JONES, Justice:
In the Circuit Court of Tate County, Mississippi, appellant was indicted, tried, and convicted for manslaughter, because of the death of a child in an automobile collision, which allegedly was the result of culpable negligence on the part of appellent.
We are unable to see any evidence of culpable negligence such as would come within the condemnation of the statute. Smith v. State, 197 Miss. 802, 20 So.2d 701, 161 A.L.R. 1 (1945).
There was very little dispute about the facts. It was shown the accident happened at night on May 29, 1965, a Saturday. Mr. and Mrs. James W. Mote were traveling from Senatobia to Coldwater between 10:15 and 10:30 on the particular night when the collision, in which the child was killed, occurred in front of the Magnolia Drive-In on Highway 51. The weather was clear, the road dry. Mote said they were driving north and saw lights to his left; the next thing he saw was a cloud of dust at the Magnolia Drive-In on the west side of the highway. Appellant was driving south on said highway, in the west lane of the two-lane road, at what some young boys estimated was a speed of eighty miles per hour.
As he approached the Magnolia Drive-In or a place on the highway in front of the Drive-In, which was some distance west of the road, a car driven by a Mr. Trimm turned to the left in front of the appellant to enter the parking grounds of the Drive-In. The evidence shows that appellant undertook to stop by applying his brakes and skidded for several feet before hitting the Trimm car crossing his lane, and further that said car had not crossed the lane but was still rolling when struck. Pictures introduced show the car crossing appellant’s lane was struck on the right side toward the rear. After striking this car, appellant’s car bounced or veered to the left, skidded 100 feet southward and in the northbound lane and collided head-on with the car in which the baby was riding. It then continued to skid after having ricocheted into said car. It is shown, and not disputed, that on that very afternoon the car of appellant had been examined by his uncle, who was an automobile mechanic, and it was found that the car had three burned valves. It was decided by the uncle of appellant that they would work on the car the next day which would be Sunday. His testimony shows beyond a doubt that with such valves in such a car as appellant was driving, its ability to accelerate would be substantially reduced. It was further shown that as a result of such valves being burned, the engine was running loud and making a lot of noise. One of the witnesses on speed was a young man about twenty years of age at the time of the trial (the trial was two years after the accident). *642 He saw appellant’s car approaching and stated: “When he came by, you could hear his loud pipes, and he was making a pretty great speed.” He later said: “I couldn’t tell you exactly how fast he was going, but he was making pretty good speed. I would say between 70 and 80. I couldn’t tell you definitely. I don’t know.”
Another witness was a young man about the same age who was sitting at the skating rink north of the place of accident who said he saw the car coming down the highway, and “it was driving a little fast; ” then he said the car kept going and “he was driving pretty fast.” He also said: “It had a roaring sound like loud pipes.” Later on he said: “It was flying. I guess that is what you would call it. He was going way over the speed limit, the way it looked to me.” Then he estimated the speed around eighty miles an hour. He also said, “It [the car] sounded like glass packed mufflers or straight pipes.” On cross-examination, when questioned about a statement he first made about not paying attention, he answered: “I looked and he was going fast. I wasn’t paying any attention, and he kept coming up mighty fast. * * * I can’t be sure he was doing 80, no, sir.” He was asked this question: “Would you tell the Jury just exactly what it was that made you believe that it was exceeding the speed limit? [Answer] The racket it was making,” but he also connected the “racket” with the moving of the car.
The other witness on speed was a boy who was sixteen years of age at the time of the accident. He was sitting on a motorcycle at the Drive-In and stated that looking north he saw a car approaching. What attracted his attention was the “sound of it and the speed of it. * * * It was a loud sound. The pipes on the car were loud.” He estimated the speed of appellant’s car at eighty miles per hour based upon the noise and the sight of it moving. At the time of the accident he was sixteen years of age and according to his testimony had driven for one and one-half years. On cross-examination, he was asked if it could have been going seventy miles an hour, and he answered that he didn’t know.
Appellant, of course, denied that he was driving at an excessive speed, and the proof for the State showed his car was making a loud noise because of the defective valves, and that the noise contributed to the estimate of speed.
It is evident from the State’s testimony and all the proof that when the car pulled across the lane in front of appellant, he did all he then could to stop. It is further evident that the driver of the car, which turned in front of him across the lane [who did not testify], was negligent, and the appellant was also negligent in that he was driving at a high speed. This is the only evidence against him, and there is no proof from which it could be said he was guilty of such gross negligence as to evince on his part a wantonness or reckless disregard of human life or the safety of others, or indifference to consequences of his act under the surrounding circumstances as to render his conduct tantamount to wilfulness. As heretofore stated, he skidded and did all he could to stop when he saw the other car in front of him. There was no credible evidence of drinking or intoxication. There are many cases following the Smith case, supra, and it is unnecessary, we think, to cite other authorities.
The lower court in its ruling on a motion for a peremptory instruction was of the opinion that it was a very close case and that the State’s case was weak. He was of the opinion that gross negligence was presented, but on the question of culpable negligence, which must be tantamount to a wanton disregard of or utter indifference to safety of human life, his opinion was the case was “very, very close.”
We are of the opinion that the State failed to meet its burden in this case, and that the motion for a peremptory instruction should be given.
*643 The case is, therefore, reversed, and the appellant discharged.
Reversed and appellant discharged.
GILLESPIE, P. J., and BRADY, IN-ZER, and ROBERTSON, JJ., concur.