520 So.2d 487 (1988)
Gerald C. CRAIG
v.
STATE of Mississippi.
No. 57137.
Supreme Court of Mississippi.
February 3, 1988.
*488 M. Charles May, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by H.M. Ray, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before En Banc.

ON PETITION FOR REHEARING
HAWKINS, Presiding Justice, for the Court:
The petition for rehearing filed in this cause is granted, the original opinion withdrawn.
Gerald C. Craig appeals from this conviction in the circuit court of the First Judicial District of Hinds County of manslaughter by culpable negligence in the operation of a motor vehicle. Because the proof in this case shows Craig clearly guilty of the lesser included offense of negligently causing a death while he was under the influence of intoxicating liquor, Miss. Code Ann. § 63-11-30(1), (4), but does not rise to the degree of culpable negligence required for a manslaughter conviction, Miss. Code Ann. § 97-3-47, we affirm his conviction of the former and remand solely for the purpose of proper sentencing under Miss. Code Ann. § 63-11-30(4).

FACTS
Robinson Road south of State Highway 18 runs in a north-south direction and is two-lane (except at widened intersections). The paved surface is 22 feet wide.
On Tuesday evening, just before 8:00 p.m. on September 18, 1984 Ray Wilson was driving north on Robinson Road with his son Randall L. (Randy) Wilson headed to the Metrocenter to purchase a pair of shoes for Randy. The night was clear. Just north of McDowell Road they passed a Pizza Hut where a motorcycle, waiting for them to pass, pulled into the street behind them. Randy had some familiarity with motorcycles, and observed it was a Yamaha. Both Randy and Wilson observed that the headlight of the motorcycle was on, and the driver was wearing a helmet. Wilson was driving 35-40 miles per hour, the motorcycle trailing the Wilson car. Just after the vehicles had proceeded north through the Raymond Road intersection, at the Baldwin Funeral Home and St. Paul Presbyterian Church, the motorcycle accelerated and passed Wilson's car. At some point as they proceeded north, either along the road or at the hospital road intersection, a car got between the Wilson car and the motorcycle, and the three vehicles proceeded north along Robinson Road. The Wilsons were able to see both the preceding automobile and the motorcycle. At Greenway Drive, the preceding automobile turned off Robinson Road, and the Wilsons *489 were able to see the motorcycle proceeding north over the bridge across Interstate 20.
For only a matter of seconds at the most, the motorcycle, as it went beyond the crest of the bridge, was out of the Wilsons' sight.
When the Wilsons reached the crest of the bridge and proceeded north they could see the motorcycle laying on its side, and  as Wilson observed  the dust from its rear wheel floating. The headlight on the motorcycle was on. They also saw a blue Ford pickup truck headed diagonally across the center line.
Wilson stopped his car, and the two of them got out. They did not see the driver either of the motorcycle or the truck. Randy walked toward a house on the right (east) side of the street, and met Craig coming out on the porch.
Randy testified:
A. I asked him where the guy on the motorcycle was, and I didn't really get an answer. And when we got back to the motorcycle I asked where the guy on the motorcycle was because I'd imagined maybe it was a stolen motorcycle and the guy got up and ran off or something. And the guy pointed back down to the motorcycle and kind of laughed and said, "I don't know where the guy is."
(Vol. II, p. 226)
Randy again asked Craig about the rider of the motorcycle, "And he kind of laughed and shrugged his shoulders and pointed at the motorcycle and said, `That's all I see.'" (Vol. II, p. 227)
Randy had no flashlight, but with a cigarette lighter started searching for the motorcycle rider. In a ditch just north of the driveway he found Timothy L. Rooker, who was dying. Craig did not assist in searching for Rooker. As far as the accident was concerned, Craig stated that he never saw the driver of the motorcycle, and did not see the motorcycle until he felt its impact. Wilson noticed Craig's speech was slow.
Jackson police officers arrived at the scene a few minutes later. The damage to the motorcycle was on the left side at the gas tank and engine. The left front fender of the pickup was bent and the left headlight knocked out.
Craig was indicted on November 7, 1984, for feloniously killing Rooker by culpable negligence in the operation of a motor vehicle.
All witnesses for the State testified that the pickup was well over into the northbound lane of traffic. State witnesses also testified that the motorcycle was on the east shoulder in the northbound lane, east of the pickup. A review of the scene showed the motorcycle laid down approximately 35 feet of skidmark before the point of impact, shown by a gouge mark on the asphalt. The gouge mark was four feet from the east edge of the pavement, seven feet east of the centerline.
Police Officer George McCluer observed that the pickup was blocking two-thirds of the northbound lane. Craig told McCluer that he was coming home and going to make a left turn into the driveway at his residence, and did not see the motorcycle until he was hit. McCluer testified Craig was very intoxicated, that he talked with a slurred tongue, staggered in moving, and he could smell alcohol on Craig's breath "mixed with something sweet, as if he had used mouthwash or something of this nature."
The officers later asked Craig to move his truck, and he was unable to get it out of gear. One of the officers got the gear into neutral and the pickup was pushed into the driveway.
Craig was not injured in the collision.
By measurement the driveway to Craig's residence was 365 feet from the north edge of the bridge over Interstate 20. The street is straight, and there was nothing to impede Craig's view to the south as he approached his driveway.
All the police officers following McCluer likewise testified Craig was heavily intoxicated, that the pickup was either two-thirds or three-fourth across the centerline over into the northbound lane of traffic. The officers thus testifying were D.L. Gladney, *490 Louie Brooks, Gary Sheppard, Jack Coulson and John Green. The DUI van was called to the scene, and Gladney, Sheppard and Coulson testified that Craig was requested four times at the scene to take a breathalyzer test to determine the alcohol content in his blood, but refused. He was described as smiling, happy-go-lucky, and acting strangely when he refused to take the breathalyzer test.
At least an hour and a half later, when Craig was in jail, his attorney requested that a test be administered to determine the blood count but the officers refused to give it. They testified the refusal was based upon the fact that this delay in giving the test would not have produced accurate results of the alcohol in Craig's blood at the time of the collision.
Robert D. Martin, the county coroner, testified that Rooker died as a result of injuries received in the collision.
Craig did not testify at the trial. George A. Martin, Sr., a neighbor and retired justice court judge who had known Craig for thirty years, testified he and his wife heard the loud noise and went out to investigate. He said the left front wheel of the pickup was twelve to eighteen inches over the centerline. He said he smelled no alcohol on Craig's breath even though he asked him to blow in his face, and that all he could smell was the "snuff that he eats." He said Craig acted excited and scared, and that normally Craig was slow reacting. He also did not know of Craig's drinking habits, had never seen him drinking. Mrs. Emma Martin also testified she smelled no alcohol on Craig's breath, but did smell the Skoal that he dipped.
Dudley Watkins, who operated a mini-warehouse across the street also came out when he heard a racket. He said the pickup was eight to ten inches across the centerline of the highway. He also testified he smelled no alcohol on Craig's breath.
The defense also called an engineer who expressed an opinion that the vehicles met head-on.
The State was granted two instructions on manslaughter by culpable negligence, and one authorizing a conviction under Miss. Code Ann. § 63-11-30(4).[1]
*491 Following deliberations the jury found Craig guilty as charged in the indictment and he was sentenced to 20 years imprisonment.

LAW
Craig first argues that the State should have been precluded from trying him under the manslaughter statute because he could also have been prosecuted for the lesser included offense of negligently killing another while under the influence of intoxicating liquor. Miss. Code Ann. § 63-11-30.
Miss. Code Ann. § 97-3-47 governs manslaughter through culpable negligence:
Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.
Miss. Code Ann. § 97-3-25 gives the authorized penalty for a manslaughter conviction:
Any person convicted of manslaughter shall be fined in a sum not less than five hundred dollars, or imprisoned in the county jail not more than one year, or both, or in the penitentiary not less than two years, nor more than twenty years.
Miss. Code Ann. § 97-3-47 is an involuntary manslaughter statute, and applies whether the instrument causing death was a motor vehicle or some other instrument or instrumentality. Gandy v. State, 373 So.2d 1042, 1946 (Miss. 1979).
Mississippi's Implied Consent Law was enacted by Law of 1983, ch. 466, effective July 1, 1983; Miss.Code. Ann. § 63-11-30(1) of the Acts states in pertinent part:
§ 63-11-30. Penalties for operation of vehicle while under influence of intoxicating liquor or other substance that impairs ability to operate vehicle; where violation causes injury or death to another person.
(1) It is unlawful for any person to drive or otherwise operate a vehicle within this state who:
(a) is under the influence of intoxicating liquor;
(b) is under the influence of any other substance which has impaired such person's ability to operate a motor vehicle; or ...
Subsection 4 of this statute sets forth the crime of injury to or killing of another person while operating a motor vehicle in violation of subsection (1), supra, and the penalty therefor:
(4) Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another or mutilates, disfigures, permanently disables or destroys the tongue, eye, lip, nose or any other limb or member of another shall, upon conviction, be guilty of a felony and shall be committed to the custody of the state department of corrections for a period of time not to exceed five (5) years.
The fact that Craig could have been prosecuted under either statute by no means required the State to select the offense with the lesser penalty. Cumbest v. State, 456 So.2d 209, 223 (Miss. 1984), so long as it is made clear which statute the State has selected for prosecution. In this case, the wording of the indictment clearly informed Craig that he was being prosecuted under the manslaughter statute by culpable negligence.
Craig further argues in his brief, however, that the proof in this case only supports a conviction under Miss. Code Ann. § 63-11-30(4) and that he should be sentenced thereunder, not under Miss. Code Ann. § 97-3-25. In his petition for rehearing, Craig concedes proof of guilt of driving his pickup while intoxicated and of negligence, and that he could be sentenced under Miss. Code Ann. § 63-11-30(4). Indeed, in the alternative he asks that we "affirm as to guilty [sic] and render a sentence of five years in keeping with § 63-11-30(4)." P. 6, Brief in Support of Petition for Rehearing; also, see P. 2, Petition for Rehearing.
On this point Craig has persuaded us we erred in affirming his conviction of manslaughter by culpable negligence when he is only guilty of the lesser included offense *492 in this case of negligently causing the death of another person while under the influence of intoxicating liquor.
The proof in this case is overwhelming that Craig at the time of the collision was driving his pickup while under the influence of intoxicating liquor. On appeal his counsel does not deny that he was intoxicated. Aside from this there is ample proof that Craig negligently started to turn into his driveway without seeing the approaching motorcycle and struck its side, thereby causing the death of Rooker.
Was this negligence culpable, however?
In Grinnel v. State, 230 So.2d 55, 558 (Miss. 1970), this Court, quoting from Smith v. State, 197 Miss. 802, 20 So.2d 701 (1945), stated:
In order then to give the term culpable negligence in the statute its proper setting instead of harking back to gross negligence, the term culpable negligence should be construed to mean a negligence of a higher degree than that which in civil cases is held to be gross negligence, and must be a negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and that this shall be so clearly evidenced as to place it beyond every reasonable doubt.
197 Miss. at 818, 20 So.2d at 706. See Campbell v. State, 285 So.2d 891, 893 (Miss. 1973):
[C]ulpable negligence within the meaning of the foregoing code section may be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as the result of the willful creation of an unreasonable risk.
See also Stever v. State, 503 So.2d 227, 229 (Miss. 1987); Moore v. State, 238 Miss. 103, 117 So.2d 469 (1960), holding the negligence must be of such magnitude as to be the "equivalent of criminal intent."
As this Court made clear in Cutshall v. State, 191 Miss. 764, 4 So.2d 289 (1941), and in Dickerson v. State, 441 So.2d 536 (Miss. 1983), while driving a motor vehicle under the influence of intoxicating liquors is a crime in and of itself, and an undoubted serious menace upon our highways and streets, this in and of itself does not constitute culpable negligence, nor does it make what would otherwise be no more than a negligent act in operating a motor vehicle culpable under the meaning of the statute. See also, Stever v. State, supra.
Factually, the three closest cases to this case are Gandy v. State, 373 So.2d 1042 (Miss. 1979), and the recent case of Gibson v. State, 503 So.2d 230 (Miss. 1987). In Gandy v. State, supra, we upheld a conviction of manslaughter when the evidence showed that the defendant while intoxicated was driving on the wrong side of the highway where it was straight, and collided with a vehicle going in the opposite direction. In Gibson v. State, supra, the defendant while intoxicated drove off the highway into the rear of another parked vehicle, which had its tail-lights burning. There was no purpose in Gandy driving down the wrong side of a straight level stretch of a highway, and there was no purpose in Gibson driving off the highway into a well-lit four-wheel drive truck.
In Atkinson v. State, 392 So.2d 205 (Miss. 1981), we affirmed a manslaughter conviction of a driver who, in attempting to pass another vehicle on a two-lane highway, collided head-on with an approaching automobile. The driver was intoxicated at the time. Justice Broom, speaking for the Court in Atkinson, however, noted that there was a lapse of several seconds from the time Atkinson got into the wrong lane in which he could have moved safely back into the proper lane.
In this case the State had no eyewitnesses to the actual collision between the motorcycle and the pickup. The State had no eyewitnesses to Craig's driving just prior to the accident, or when he was making a left turn. Contrary to Gandy and Gibson, there was a purpose in Craig making a left turn where he did, the negligence consisted in its timing. Also, there is absent in this case the proof available in Atkinson of an opportunity to avoid a collision after the danger could clearly be observed.
*493 While the proof in this case amply supports a case of negligently turning left across the street when another vehicle was closely approaching, in the absence of Craig's manifest intoxication, there was simply no proof of any driving on the part of Craig which could be characterized as culpable negligence.
Miss. Code Ann. § 63-11-30(4) being a lesser included offense necessarily encompassed in the facts of this case under the more serious charge of manslaughter by culpable negligence, we affirm Craig's conviction of negligently causing the death of another while operating a motor vehicle while under the influence of intoxicating liquor, and remand to the circuit court solely for the purpose of sentencing under this Act. Murray v. State, 403 So.2d 149 (Miss. 1981).
CONVICTION UNDER MISS. CODE ANN. § 63-11-30(4) AFFIRMED; CAUSE REMANDED TO THE CIRCUIT COURT FOR SENTENCING THEREUNDER.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] The two instructions which would have authorized a conviction by culpable negligence under Miss. Code Ann. § 97-3-47 were as follows:

The Court instructs the Jury that manslaughter is the killing of human being by culpable negligence of another and if you believe, beyond a reasonable doubt, from the evidence in this case that Gerald C. Craig did on September 18, 1984, in the First Judicial District of Hinds County, Mississippi, kill Timothy L. Rooker, a human being, by an act of culpable negligence, which is more than gross negligence and constitutes a departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to evidence an indifference to the consequences of such acts, then and in that event you should find the defendant, Gerald C. Craig, guilty as charged, and the form of your verdict should be:
"We, The Jury, find the Defendant guilty as charged."
You should write your verdict on a separate sheet of paper.
And:
The court instructs the Jury that if you believe from the evidence in this case, beyond a reasonable doubt, that on September 18, 1984, the deceased Timothy L. Rooker, was a living person, and that he died as a result of the acts of the defendant, Gerald C. Craig, and that the defendant's acts demonstrated conduct of such negligence as to evince a wanton or reckless disregard for the safety of human life, or such indifference to the consequences of his actions as to render his conduct tantamount to wilfulness, then it is your sworn duty to find the defendant guilty as charged.
The instruction authorizing a conviction under Miss. Code Ann. § 63-11-30-(4) is as follows:
The Court instructs the Jury that if you believe from the evidence in this case, beyond a reasonable doubt, that on the 18th day of September, 1984, the defendant, Gerald C. Craig, drove a vehicle while under the influence of intoxicating liquor and while so operating and driving said vehicle, caused the death of Timothy L. Rooker, a human being, in a negligent manner, but if you do not find from the evidence in this case beyond a reasonable doubt that the defendant conducted himself in such a manner as to make him guilty of manslaughter as defined elsewhere in these instructions, it is your sworn duty to find the defendant guilty of negligently causing the death of another while driving under the influence of intoxicating liquor, in which case, your verdict, which is to be written on a separate sheet of paper, should be as follows:
"We, the Jury, find the defendant guilty of negligently causing the death of another while driving a vehicle under the influence of intoxicating liquor."