# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-KA-00804-SCT

*WILLIS MILLER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/18/2024 |
| TRIAL JUDGE: | HON. MICHELLE DEAN EASTERLING |
| TRIAL COURT ATTORNEYS: | JAY HOWARD HURDLE |
| | JOHN F. PERRY, III |
| | LEOGHAIN STRNAD FAIR |
| | SCOTT WINSTON COLOM |
| | COLLEN LEIGH HUDSON |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | AMBER L. STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DANIELLE LOVE BURKS |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/13/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., GRIFFIS AND SULLIVAN, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Willis Miller appeals his aggravated-assault conviction. On appeal, Miller argues that his indictment was defective and that the State's attempt to cure the defect was ineffective and prejudicial. We find no error and affirm Miller's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     In April 2022, Adam was riding a four-wheeler with his younger siblings, Paige and

Peter.[1]  Adam was driving, Peter was sitting in front of Adam, and Paige was riding on the back of the four-wheeler.  They were driving along Williams Road in Bethel when a pickup truck hit them from behind.  Witness testimony revealed that the truck was driving on the wrong side of the road.  All three children were thrown from the four-wheeler.

¶3.     Prior to the accident, Jerunaous Boyd was at Miller's house drinking.  The pair left, with Miller driving Boyd's truck, a 2016 Dodge Ram.  Boyd testified that he was concerned about the speed Miller was driving, and he told Miller to "slow down" before the truck struck the four-wheeler.

¶4.     Officer Cole Britt responded to the scene and testified that "there was an odor of intoxicating beverage coming from within the vehicle."  Britt also testified that he "could smell a heavy odor of intoxicating beverage coming from" Miller.

¶5.     A search warrant was prepared and served to Oktibbeha County Hospital for a blood draw of Miller.  The collision occurred around 7:44 p.m., and Miller's blood was drawn around 11:23 p.m. Testing of Miller's blood sample by the Mississippi Forensics Laboratory revealed 0.131 percent ethyl alcohol, and a urine sample of Miller's had a result of 0.132 percent ethyl alcohol.  A forensic toxicologist testified that this was above the legal limit to drive in Mississippi, which is 0.08 percent.

¶6.     Matthew Eller, a certified accident reconstructionist, documented and surveyed the accident scene.  Eller opined that the "front left of the Dodge Ram collided with the right rear" of the four-wheeler.  Based on data from the truck's blackbox, Eller determined that

_____

[1] We use fictitious names to protect the minors' identities.  At the time of the accident, Adam was thirteen years old, Paige was nine years old, and Peter was one year old.

the truck was traveling at ninety miles per hour five seconds before the crash, ninety-three miles per hour four seconds before the crash, ninety-six miles per hour three seconds before the crash, ninety-six miles per hour two seconds before the crash, and finally at ninety-seven miles per hour one second before the crash. Additionally, the truck was accelerating until one second prior to impact, and the brake was off for the entirety of the time from five seconds before until the time of the crash. Eller further testified that the truck was traveling on the wrong side of the road at the time of the crash.

¶7. Andrew Mullins, an emergency-medical technician, responded to the scene. He testified that Paige was in cardiac arrest and was not breathing upon his arrival. Additionally, Mullins could not detect a pulse from Paige. Paige was transported to Oktibbeha County Hospital and ultimately died as a result of the accident. Adam was diagnosed with a traumatic brain injury. It is unclear from the record what, if any, injuries Peter sustained.

¶8. Miller was indicted as a habitual offender for aggravated DUI that resulted in the death of Paige (Count I) and for the aggravated assault of Adam (Count II). Specifically, Count II of Miller's indictment alleged that Miller

> did willfully, unlawfully, and feloniously cause serious bodily injury to [Adam] by operating a motor vehicle at a high rate of speed while intoxicated and running into the victim with said vehicle, thereby manifesting extreme indifference to the value of human life, in violation of [Mississippi Code Section] 97-3-7(2)(a)(i)[.]

(Emphasis omitted.)

¶9. After the State rested its case-in-chief, the prosecutor moved to amend Count II of Miller's indictment to add the word "recklessly," arguing that it was a scrivener's error, that

3

Miller was on notice, and that it would conform to the proof shown at trial. The court overruled the defense's objection, finding that adding the word "recklessly" did not constitute any unfair surprise, and granted the State's motion to amend the indictment.

¶10. A jury found Miller guilty of both aggravated DUI and aggravated assault. He was sentenced to serve a term of twenty-five years in custody for aggravated DUI and a consecutive term of twenty years in custody for aggravated assault. Miller filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial, which the trial court denied. Miller appealed.

¶11. On appeal, Miller argues that Count II of his indictment was fatally defective since it omitted an essential element of the offense while improperly conflating others, and he argues the State's belated attempt to cure the defect was ineffective and prejudicial.

## DISCUSSION

*I. Whether Miller's indictment was defective.*

¶12. Miller first asserts that the original indictment was fatally defective because it omitted the term "recklessly," an essential element of aggravated assault.

¶13. "[W]hether an indictment is defective is an issue of law and therefore deserves a relatively broad standard of review, or de novo review." ***Brady v. State***, 337 So. 3d 218, 223 (Miss. 2022) (alteration in original) (internal quotation marks omitted) (quoting ***Forkner v. State***, 277 So. 3d 946, 948-49 (Miss. 2019)).

¶14. "A person is guilty of aggravated assault if he or she . . . attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under

4

circumstances manifesting extreme indifference to the value of human life[.]" Miss. Code Ann. § 97-3-7(2)(a)(i) (Rev. 2020).

¶15.    Mississippi Rule of Criminal Procedure 14.1(a)(1) states that an indictment "shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." "So long as from a fair reading of the indictment taken as a whole the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." *Harrison v. State*, 722 So. 2d 681, 687 (Miss. 1998) (internal quotation marks omitted) (quoting *Henderson v. State*, 445 So. 2d 1364 (Miss. 1984)).

¶16.    "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[s]e intended to be punished.'" *Quang Thanh Tran v. State*, 962 So. 2d 1237, 1241 (Miss. 2007) (citing *United States v. Carll*, 105 U.S. 611, 612, 26 L. Ed. 1135 (1882)). "Moreover, 'the language of the statute may be used in the general description of an offen[s]e, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offen[s]e, coming under the general description, with which he is charged.'" *Id.* at 1241-42 (citing *United States v. Hess*, 124 U.S. 483, 487, 8 S. Ct. 571, 31 L. Ed. 516 (1888)). "[W]hether an indictment in the language of the statute is sufficient, or whether other words or acts are necessary to properly charge the commission of a crime is dependent upon the nature of the offense and the terms in which it is described by the statute." *Id.* at

1242 (internal quotation marks omitted) (citing *Jones v. State*, 856 So. 2d 285, 289 (Miss. 2003)).

¶17.     Miller's original indictment notified him that he was being charged with aggravated assault for "willfully, unlawfully, and feloniously caus[ing] serious bodily injury to [Adam] by operating a motor vehicle at a high rate of speed while intoxicated and running into the victim with said vehicle, thereby manifesting extreme indifference to the value of human life[.]"  While the term "recklessly" was in fact omitted, the indictment cited Section 97-3-7(2)(a)(i) and sufficiently put Miller on notice of the charges against him.   Miller's indictment alleged that he "manifest[ed] [an] extreme indifference to the value of human life" "by operating a motor vehicle at a high rate of speed while intoxicated and running into [Adam] with said vehicle[.]"  This language is substantially similar to the statutory language in Section 97-3-7(2)(a)(i), which says that a person is "guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or *recklessly under circumstances manifesting extreme indifference to the value of human life*[.]"  § 97-3-7(2)(a)(i) (emphasis added).  Miller was therefore sufficiently on notice that his indictment was based on conduct falling under the reckless portion of the cited statute.

¶18.     Miller further asserts that his original indictment "incorrectly links a willful act with a manifestation of extreme indifference to human life."  As the State points out, however, we have held that "'[t]he recklessness or negligence contemplated by the [aggravated assault] statute is in the act itself' and 'does not refer to the subjective intent of the defendant.'" *Gilmore v. State*, 119 So. 3d 278, 286 (Miss. 2013) (first alteration in original) (quoting

6

*Nobles v. State*, 464 So. 2d 1151, 1154 (Miss. 1985)). Additionally, in *Nelson v. State*, this Court held that the "recklessly under circumstances manifesting extreme indifference to the value of human life" language in the aggravated assault statute was "analogous to our definition of culpable negligence in homicide cases[.]" *Nelson v. State*, 361 So. 2d 343, 344 (Miss. 1978). Culpable negligence was defined as the "conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the [*willful*] *creation of an unreasonable risk thereof.*" *Id.* (emphasis added) (quoting *Smith v. State*, 197 Miss. 802, 817, 20 So. 2d 701, 705 (Miss. 1945)). Nelson's conviction of aggravated assault was affirmed after the Court found he pointed a pistol at the victim, "manifest[ing] an extreme indifference to the value of human life," "[*r*]*egardless of what* [*he*] *intended*[.]" *Id.* at 345 (emphasis added).

¶19. We have held:

> It is not essential, in an indictment for a statutory crime, that the exact descriptive language of the statute be used. Equivalent words of substantially the same meaning as those of the statute may be substituted. Where the language used in the indictment is sufficiently specific to give notice of the act made unlawful, and exclusive enough to prevent[] its application to other acts, it is sufficient.

*Gilmer v. State*, 955 So. 2d 829, 837 (Miss. 2007) (quoting *Price v. State*, 898 So. 2d 641, 654 (Miss. 2005)). Miller's indictment was clear as to what he was being charged with and sufficiently set forth the elements of aggravated assault. Furthermore, the jury was properly instructed that it had to find that "Miller recklessly and unlawfully caused serious bodily injury to" Adam in order to find him guilty of aggravated assault under Count II of the indictment. Thus, Miller's indictment was not defective.

7

## II. Whether Miller suffered prejudice and was denied a fair trial.

¶20. Miller asserts that he "suffered unfair prejudice and was denied his right to a fair trial when the State was allowed to amend the indictment." Specifically, Miller argues that because the State did not remove the term "willfully" when it amended his indictment, the indictment was legally insufficient because "one cannot act both willfully and recklessly."

¶21. The State may amend an indictment "if the amendment does not change the facts which are the essence of the offense, or materially alter a defense of the defendant so that it results in prejudice to the case." *Jones v. State*, 912 So. 2d 973, 976 (Miss. 2005) (citing *Griffin v. State*, 584 So. 2d 1274, 1275-76 (Miss. 1991)). We have opined that "courts may amend indictments only to correct defects of form and that defects of substance must be corrected by the grand jury." *Id.* (citing *Rhymes v. State*, 638 So. 2d 1270, 1275 (Miss. 1994)). "An amendment is one of form if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment." *Id.* (citing *Pool v. State*, 764 So. 2d 440, 443 (Miss. 2000)). "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made." *Id.* (internal quotation marks omitted) (quoting *Pool*, 764 So. 2d at 443).

¶22. We agree with the trial court that the amendment of Miller's indictment did not cause any unfair surprise to him. Miller's defense at trial was not based on whether he acted intentionally, willfully, or recklessly but rather that his actions were not the sole cause of the collision. Defense counsel argued that "the primary cause of the collision was not solely the

8

speed, not solely the impairment of Mr. Miller." Counsel suggested: "There's a combination of many factors, both on his part and on the part of the individuals in the road. It included the rocky road conditions, a potential hazard, . . . and the fact that there was an ATV in the roadway[.]" This defense was equally available to Miller after the amendment was made. Additionally, the indictment always included the language that he acted with "an extreme indifference to the value of human life[,]" and thus the substance of his defense remained the same. Miller has not shown how he was prejudiced after the State was permitted to amend his indictment. Therefore, this argument is without merit.

## CONCLUSION

¶23. Miller's conviction and sentence for aggravated assault is affirmed. Miller's indictment was not defective, and Miller failed to show that his defense was prejudiced by the State's amendment of his indictment.

¶24. **AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, P.J., MAXWELL, CHAMBERLIN, ISHEE, SULLIVAN AND BRANNING, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**