562 So.2d 91 (1990)
Anthony EVANS
v.
STATE of Mississippi.
No. 07-KA-58959.
Supreme Court of Mississippi.
May 2, 1990.
*92 Lewis J. Weeks, Jr., Wesson, for appellant.
Mike C. Moore, Atty. Gen., and Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc

ON PETITION FOR REHEARING
ANDERSON, Justice, for the Court:
On Petition for Rehearing, Points One and Two are denied; however, Point Three is granted. The original opinion entered February 14, 1990, is withdrawn and this opinion substituted therefor.
Anthony Evans was convicted under Mississippi Code Annotated, Section 97-3-47 (1972), in the Circuit Court of Copiah County on two (2) counts of manslaughter by culpable negligence and sentenced to serve ten (10) years on each count in the custody of the Mississippi Department of Corrections. The trial court suspended the last five (5) years of each sentence, with the terms to be served consecutively. Evans timely perfected this appeal raising two (2) issues which challenged the legal sufficiency of the evidence. After carefully reviewing the record in its entirety, we find that the evidence was insufficient for the jury to convict Evans of manslaughter by culpable negligence. However, the evidence was sufficient to support a guilty verdict under the provisions of Mississippi Code Annotated, Section 63-11-30 (Supp. 1987), of the lesser included offense of negligently killing another while under the influence of intoxicating liquor. Therefore, we affirm the conviction and remand the cause for resentencing.

FACTS
On a clear Sunday evening, April 5, 1987, around 8:30 p.m., Evans was driving his car south of Utica, Mississippi, on a basically level road with a sloping curve, when he struck the rear of a stalled Ford pickup truck. Willie Dell Bradley and Louis C. Miller, who were in the process of moving the pickup from the highway, were killed.
For some reason Miller's pickup truck had stalled on the road and he sought the aid of Bradley to pull it off the highway. Bradley parked his truck in front of Miller's pickup. Apparently at the time of the collision Bradley and Miller were between the two trucks connecting them with a *93 chain. The impact from Evans' car caused Bradley to fall between the two trucks, and he died instantly. Miller fell on the side of the road where he died approximately fifteen minutes later.
Three law enforcement officers arrived at the scene and testified at trial for the State. Two of them testified that Evans was intoxicated based on the results of a field breath intoxilyzer test and also because Evans smelled of alcohol, his pupils were reddish, and his speech was somewhat slurred. An officer administered a breath intoxilyzer test to Evans approximately twenty minutes after he arrived at the scene of the accident. The test showed that Evans had twenty one-hundredths percent (.20%) of alcohol in his blood.[1]
The officers at the scene testified that they observed that Miller's pickup had reflectors on each side of the tool box, as well as an operating tail light on the passenger side of the truck. The investigating officer determined that Evans was negligent in causing the accident, inattentive and not a defensive driver.
A reconstructionist from the Mississippi Highway Patrol investigated the scene of the accident on the following day. The patrolman testified that the condition of the flat, open highway had a "high coefficient of friction". He made a collision damage estimate and determined that at the time of the accident, Evans was driving 40 to 55 in a 55 M.P.H. speed zone. Such speed would have required approximately 160 feet to stop his car on that particular roadway. The reconstructionist opined that Evans did not take any action to avoid hitting the pickup, since no skid marks were present at the scene. Evans should have taken such action if the reflectors on the pickup were visible. However, if the reflectors were not visible, Evans could not have avoided the accident.
A near-by resident and relative, whom Bradley had been visiting prior to the accident, saw the tail light blinking on the right hand side of Miller's truck when the men left her home to retrieve the stalled pickup. However, she did not see the collision.
Johnny Cox, Evans' uncle who was riding in the car with him at the time of the accident, had been with Evans for approximately two hours prior to the accident. In Cox's presence, Evans did not drink any alcohol, nor did Cox think that Evans was drunk. Cox did not notice the speed at which Evans was driving, but he testified that Evans drove well. Cox testified as follows when asked to describe the events prior to the accident:
A: Well, ... when we went to come around that curve by them mailboxes it was two truck [sic] on the right-hand side, one was right behind the other stopped in the road. * * * Well, before we got to them, I told him, I said, yonder is two trucks down yonder in the road, * * * you reckon you can pull around them or what you gone do, and about that time he'd [Evans] done hit them, didn't have no lights on them.
Q: Were you able to see the trucks?
A: Yes, sir, he [Evans] had his lights on until he hit the truck and broke them out.
The State also offered the testimony of two other witnesses, one who passed Miller's stalled pickup prior to the accident at approximately 6:30 P.M., and another who passed after the accident. Both witnesses testified that they had no problems seeing or passing the truck. One witness who passed the stalled pickup also testified that the tail light was burning on Miller's truck.
Evans testified in his own defense, stating that somewhere between 2:00 and 2:30 P.M. on the date in question, he drank four or five cans of beer at home alone. Around 4:00 P.M. he left home in his car and drove around with no particular place to go. At this time he [Evans] was not drunk and was "well under control". Evans later met Cox who wanted to borrow a chain saw. Evans drove Cox to his mother's house to get the saw. Upon leaving *94 his mother's, Evans drove at a speed of 30 to 40 M.P.H. on the highway.
Evans described the events leading to the accident in pertinent part as follows:
[C]oming back down the road, ... after I passed these houses coming in this little bend, ... and just up popped this truck dead in front of me, and which it wasn't moving, just dead still in my lane, I didn't see no lights or nothing, and my uncle said `watch out', then boom, that was it, it happened real fast. * * * [B]ut it wasn't no lights on that red truck when I hit it.
According to Evans, the accident happened in a "split second"; and he had no time to react to Cox's comments about the trucks in his lane of traffic.
Evans' mother, Grace, testified that when Evans and Cox arrived at her home Evans neither drank alcohol in her presence, staggered, nor talked with a slurred speech. Grace did not know how much, if any, Evans had drunk prior to arriving at her home. Additionally, Evans' two sisters, who were at his mother's home when he and Cox arrived, corroborated the testimony that Evans was not intoxicated. Both sisters testified that they did not smell liquor on Evans, or notice that he spoke with a slurred speech.
The State called two additional law enforcement officers on rebuttal to impeach defense witnesses' testimony that Evans was not under the influence of alcohol on the night of the accident. Both officers testified that, in their opinion, Evans was intoxicated because of his actions, slurred speech, staggering, and the smell of alcohol.
After receiving and deliberating over the evidence, the jury returned a verdict of guilty of manslaughter by culpable negligence in the deaths of both Bradley and Miller. The court then sentenced Evans to the term and conditions as previously stated.

LAW

A.
Mississippi Code Annotated § 97-3-47 (1972) provides that "[e]very other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter."
In Smith v. State, 197 Miss. 802, 20 So.2d 701 (1945), the Court stated:
[M.C.A. § 97-3-47 (1972)] does not say that one shall be guilty of [manslaughter by culpable negligence] where a homicide results from `a lawful act carelessly or negligently done,' even though it was true that criminality could be affirmed of such an act at common law. Nor does our statute predicate the offense of manslaughter on `gross' negligence, either by its terms or within what a jury of laymen may understand the term gross negligence to mean. On the other hand, the Legislature in enacting this statute declaring a homicide to be manslaughter when the killing is caused by the negligence of another used alone the stronger of the words `aggravated', `culpable' or `gross' to supply the criminal intent as a necessary ingredient of a crime.
* * * * * *
`The general rule is that negligence, to become criminal, must necessarily be reckless or wanton and of such a character as to show an utter disregard of the safety of others under circumstances likely to cause injuries.'
Id., 20 So.2d at 704 (citations omitted). See, also, Gibson v. State, 503 So.2d 230 (Miss. 1987) ("culpable negligence in vehicular manslaughter cases is `negligence demonstrating a reckless disregard for the value of human life ...'"); Gant v. State, 244 So.2d 18, 19 (Miss. 1971) ("negligence of the accused must be shown to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life"). Thus, culpable negligence is defined as "the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the wilful creation of an unreasonable risk thereof." Smith, 20 So.2d at 705.
*95 In order to maintain the charge, the State must prove, beyond a reasonable doubt, guilt of such gross negligence on the occasion complained of as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness. Hynum v. State, 222 Miss. 817, 77 So.2d 313, 314 (1955) (citation omitted); Whitehurst v. State, 540 So.2d 1319, 1327-1328 (Miss. 1989).
It is uncontradicted that Evans drank at least five cans of beer earlier in the afternoon prior to the accident. He admitted to having done so. "[I]n order for the influence of intoxicating liquors to be a factor in showing criminally culpable negligence, it must contribute proximately both to the establishment of such negligence and to the resultant death." Gibson, 503 So.2d at 233 (citations omitted). See, also, Whitehurst v. State, 540 So.2d at 1323; Craig v. State, 520 So.2d 487, 492 (Miss. 1988).
In Atkinson v. State, 392 So.2d 205 (Miss. 1981), the Court affirmed a manslaughter conviction of an intoxicated driver who, in attempting to pass another vehicle on a two lane highway, collided headon with an approaching automobile. Justice Broom, speaking for the Court, noted that there was a lapse of several seconds from the time Atkinson entered the wrong lane which allowed him "an opportunity to avoid a collision after the danger could clearly be observed." (quotes cited in Craig, 520 So.2d at 492) (emphasis in original).
In Downs v. State, 206 Miss. 831, 41 So.2d 19 (1949), the Court reversed and discharged the appellant's conviction of manslaughter by culpable negligence in operation of an automobile. There, the Court stated:
The prosecution did not show any causal connection between the appellant's having had a drink of liquor and the unfortunate accident.
* * * * * *
The prosecution did not offer one word of evidence from which it could be inferred that appellant was guilty of culpable negligence of any character in the operation of his automobile. According to the record before us, he was driving the car in a prudent and proper manner, free of recklessness prior to the accident, and when confronted with the emergency created by the oncoming automobile and the presence of the deceased in about the center of the highway and the sudden darting of the deceased toward the right lane of traffic, appellant immediately swerved his car to the right onto the shoulder of the highway and made every reasonable effort to avoid striking the deceased, even to the extent of wrecking his automobile.
Id. at 21. See, also, Frazier v. State, 289 So.2d 690, 692 (Miss. 1974) (for driving under the influence of alcohol to be a factor involving culpable negligence "it must create an abnormal mental and physical condition which tends to deprive one of the clearness of intellect and control of himself which he would otherwise possess").
Similarly, here if we take away the fact that Evans drank five cans of beer earlier that afternoon, then he would not have been at fault. We recognize that intoxication could be a relevant evidential factor in a prosecution for manslaughter by culpable negligence. However, "[o]ne may be negligent while acting lawfully. One may violate the law and yet not be culpably negligent in fact. * * * For [driving under the influence of alcohol] to be a factor in a case involving culpable negligence it must create an abnormal mental and physical condition which tends to deprive one of the clearness of intellect and control of himself which he would otherwise possess." Cutshall v. State, 191 Miss. 764, 4 So.2d 289, 291-292 (1941) (citations omitted). See, also, Gandy v. State, 373 So.2d 1042 (Miss. 1979) (appellant intoxicated and in wrong lane of traffic constitutes manslaughter by culpable negligence).
In Cutshall, supra, the majority stated: The inclination to condemn the growing tendency to operate vehicles while intoxicated *96 should not be curbed. But this laudable sentiment should not find outlet in intimations to the jury to us the occasion to denounce a practice by convicting a defendant of that with which he is not charged. One who is guilty of driving while under the influence of intoxicating liquor may be deprived of his right to drive upon the highways but not of his right to a fair and impartial trial under due process.
Additionally, in Craig v. State, 520 So.2d 487 (Miss. 1988) the Court stated:
[W]hile driving a motor vehicle under the influence of intoxicating liquors is a crime in and of itself, and an undoubted serious menace upon our highways and streets, this in and of itself does not constitute culpable negligence, nor does it make what would otherwise be no more than a negligent act in operating a motor vehicle culpable under the meaning of the statute.
520 So.2d at 492 (citing Cutshall, supra); Dickerson v. State, 441 So.2d 536 (Miss. 1983).
Evans and Cox were the only witnesses to the accident. Both men testified that Evans was driving well, and not recklessly, negligently, unlawfully, or at a high rate of speed. In such a case where no one else witnesses the fatal accident, the defendant's version of the incident must be accepted as true, if left uncontradicted and the physical facts, or facts of common knowledge are not unreasonable. Phillips v. State, 379 So.2d 318, 319 (Miss. 1980) (Court reversed and discharged the appellant's conviction of involuntary manslaughter by culpable negligence involving a shooting where there was no horseplay, drunkenness, brawling or any other reckless conduct tantamount to a wanton disregard of, or utter indifference to, the safety of a human life). See, also, Ducking v. State, 259 So.2d 686 (Miss. 1972); Brown v. State, 217 So.2d 640 (Miss. 1969).

B.
In the case sub judice a tragedy occurred where two lives were taken. However, in the absence of Evans' intoxication, the evidence was not sufficient to establish culpable negligence. Here, the State proved only that Evans' car, in fact, collided with the rear of Miller's pickup truck and that Evans was driving while intoxicated. For instance, the record does not disclose that Evans drove recklessly or unlawfully prior to the accident. Rather, both Evans and Cox testified that Evans drove at a normal speed and was in his proper lane of traffic prior to the accident. The reconstructionist determined that Evans was not speeding, but drove at or below the 55 M.P.H. speed limit. Finally, no other witnesses contradicted Evans' and Cox's testimony, which was reasonable; therefore, their versions of the accident must be accepted as true.
At the most, the State proved only that Evans was intoxicated by the breath intoxilyzer test results and testimony, as well as being inattentive by Cox's testimony. However, the State's failure to prove manslaughter by culpable negligence does not afford relief to Evans. The facts of the cause encompass the lesser included offense of "operation of a vehicle while under the influence of intoxicating liquor". Such an instruction was submitted to the jury for its deliberation.
Mississippi's Implied Consent Law was enacted by Laws of 1983, ch. 466, effective July 1, 1983. At the time of Evans' conviction, Mississippi Code Annotated, Section 63-11-30 (Supp. 1986), provided in pertinent part:
(1) It is unlawful for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor; (b) is under the influence of any other substance which has impaired such person's ability to operate a motor vehicle; or (c) has ten one-hundredths percent (.10%) or more by weight volume of alcohol in the person's blood based upon milligrams of alcohol per one hundred (100) cubic centimeters of blood as shown by a chemical analysis of such person's breath, blood or urine administered as authorized by this chapter.
* * * * * *

*97 (4) Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another ... shall, upon conviction, be guilty of a felony and shall be committed to the custody of the State Department of Corrections for a period of time not to exceed five (5) years.[2]

CONCLUSION
We are of the opinion that while the State failed to prove manslaughter by culpable negligence, it presented ample proof to support the jury's guilty verdict of the lesser included offense of negligently killing another while under the influence of intoxicating liquor. In the past we have dealt with such instances by remanding the cause to the lower court for appropriate sentencing. Here, we do the same. See, Childs v. State, 521 So.2d 882 (Miss. 1988); Craig v. State, 520 So.2d 487 (Miss. 1988). Therefore we affirm Evans' conviction for manslaughter and remand this cause solely for appropriate sentencing under Mississippi Code Annotated, Section 63-11-30(4) (Supp. 1986).
AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR SENTENCING IN NO EVENT TO EXCEED FIVE (5) YEARS ON EACH COUNT AS PROVIDED THEREIN AT THE TIME OF EVANS' CONVICTION.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
NOTES
[1] Ten one-hundredths percent (.10%) or above is considered as driving under the influence of alcohol.
[2] This Subsection was amended effective from and after July 1, 1989, that such person "shall be committed to the custody of the state department of corrections for a period of time not to exceed ten (10) years".