# IN THE COURT OF APPEALS 11/12/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 95-KA-00458 COA

**AMY RENEE JONES**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. ANDREW CLEVELAND BAKER

COURT FROM WHICH APPEALED: DESOTO COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

DANA J. SWAN

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL BY: EDWIN A. SNYDER

DISTRICT ATTORNEY: ROBERT L. WILLIAMS

NATURE OF THE CASE: CRIMINAL: MANSLAUGHTER

TRIAL COURT DISPOSITION: MANSLAUGHTER: SENTENCED TO SERVE A TERM OF 15 YRS IN THE MDOC, WITH THE LAST 7 YRS SUSPENDED PENDING THE FUTURE GOOD BEHAVIOR OF DEFENDANT; DEFENDANT SHALL PAY ALL COSTS OF COURT


BEFORE BRIDGES, P.J., COLEMAN, AND PAYNE, JJ.

PAYNE, J., FOR THE COURT:

Amy Renee Jones was indicted and convicted of manslaughter. The trial court sentenced her to serve a term of fifteen (15) years in the custody of the Mississippi Department of Corrections with the last seven (7) years suspended pending the future good behavior of the Appellant. The court denied Jones's motion for JNOV or, in the alternative, a new trial. We find that none of Jones's issues on appeal has merit and therefore affirm.

FACTS

On September 11, 1994, at 9:45 P.M., the Hernando Police Department received a radio transmission from Hernando Fire Chief, Hubert Jones, indicating that his daughter, Amy Jones, had "left the driveway a flying, and she done took a great number of pills . . . ." Brenda Sanders testified that she heard Hubert Jones's transmission over her police scanner in her office. Ms. Sanders testified that she then heard tires squealing outside of her office building, that when she looked out her window she saw a white car fitting the description being broadcast over the radio as it slid into the intersection of South Street and Highway 51 narrowly avoiding a collision with another car.

William J. Beeman, a reserve patrolman, testified that he too saw the white car as it slid into the intersection and then turned south on Highway 51. Mr. Beeman and Tom Burke, a state trooper, each testified that they witnessed this white car as it passed a white Omni in a no passing zone and proceeded south on Highway 51. Shortly thereafter, Johnny Armstrong, a passenger in another vehicle, testified that a white car passed him while going up a hill in a no passing zone, and that the white car ran onto the shoulder of the road twice before disappearing from his sight.

Norman Woolfolk testified that, as he was traveling south on Highway 51, he looked in his rearview mirror and saw a car which appeared to be driving in the middle of the road. Mr. Woolfolk testified that his vehicle was then struck from behind by the Appellant's car. Seconds later, the Appellant, Amy Jones, driving a white Oldsmobile, collided head-on with the victim, Amy Rutherford, as Rutherford was traveling north on Highway 51. Amy Rutherford was fatally injured as a result of this collision. The witnesses indicated that the above sequence of events occurred in a space of less than three miles.

Jones moved for a directed verdict which was denied. Jones then moved for a mistrial on the grounds that the tape recorded telephone call from Appellant's father was irrelevant and prejudicial and should not have been allowed. The trial court denied the motion. Jones then rested her case.

The jury, during deliberations, asked to hear the tape recording again which was permitted. The jury found Jones guilty of manslaughter by culpable negligence and sentenced Jones to serve fifteen (15) years in the custody of the Mississippi Department of Corrections with the last seven (7) years suspended pending the Appellant's good behavior. The trial court subsequently denied Jones's motion for JNOV/new trial, and she now appeals.

ANALYSIS

## I. DID THE TRIAL COURT UNDULY PREJUDICE THE JURY BY ADMITTING THE TAPE RECORDED STATEMENT OF THE APPELLANT'S FATHER?

Jones argues that the trial court unfairly prejudiced the jury by admitting into evidence a tape recorded phone call made by the Appellant's father to the police dispatcher on the night of the accident. The statement contained in the tape recording is as follows: "that girl of mine just left out of the driveway a flying, and she done took a great number of pills, and I don't know what she's going to do." Jones contends that the "taking of the pills" was irrelevant and inflammatory evidence which the State could not substantiate. Jones argues that the tape recording led the jury to believe that Jones had taken drugs and driven off in her car in a drug induced state that eventually led to the death of Amy Rutherford. Jones contends that it was incumbent on the State to prove that a nexus existed between the pills and the accident. She contends that not only did the State fail to show the existence of a nexus, but it also failed to prove what kind of pills were taken, how many, if any, were taken; and what effect, if any, the pills had on Jones's driving. Thus, according to Jones, the introduction of the tape recording served no purpose other than to prejudice the jury and should have been excluded as initially requested by the defense in its motion in limine. Jones states that the prejudicial impact the tape had on the jury's decision is evidenced by the fact that the jury asked to hear the tape during its deliberations. Jones argues that the jury would not have found her guilty of culpable negligence had the tape recording been excluded. Jones contends that the taking of the pills was the only element that elevates this accident to culpable negligence, and absent such proof there is no culpable negligence.

The State contends that the "taking of the pills" was not offered to prove that the pills caused Jones's reckless driving, but, instead, to show "the Defendant's state of mind concerning indifference to consequences and reckless disregard for human life." The State argues that the tape recording was offered as circumstantial evidence to establish the Appellant's state of mind immediately preceding and connected with a course of reckless driving which was the direct cause of the victim's death. The State contends that it never emphasized the taking of the pills over the reckless driving. The State argues that "the driving is the culpable negligence and the pills represent the surrounding circumstances--it's not what's in the body that is important but what the Defendant does while in the vehicle." We agree.

Section 97-3-47 provides that "[e]very other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law not provided for in this title, shall be manslaughter." Miss. Code Ann. § 97-3-47 (1972). In order for the State to maintain the charge, the State must prove, beyond a reasonable doubt, that the Appellant acted with such wanton or reckless disregard for the safety of human life or such indifference to the consequences that the conduct under the surrounding circumstances amounted to willfulness. *Evans v. State*, 562 So. 2d 91, 92 (Miss. 1990); *Smith v. State*, 197 Miss. 802, 20 So. 2d 701, 702-03 (1945).

In the present case, the State sought to prove "recklessness" by putting on the testimony of five people who witnessed the Appellant's driving almost continuously within a space of less than three miles. Two of the witnesses testified that they saw a white car fitting the description of the Appellant's car slide through an intersection and turn south toward the accident site. Seconds later, a

third witness testified that he saw a white car pass another car in a no passing zone. Immediately thereafter, a fourth witness stated that a white car passed him in a no passing zone, and that he saw this white car leave the road twice before disappearing over a hill. Finally, the fifth witness testified that just before Jones collided with the rear of his car, Jones appeared to be driving in the middle of the road. It was immediately after this collision that Jones collided with the victim, Amy Rutherford. The aforementioned testimony, standing alone, is sufficient to infer that the Appellant was driving recklessly prior to and up until the fatal accident. It is from this testimony that the jury must determine whether the Appellant's conduct was such that she displayed a disregard for human safety or an indifference to the consequences. *Gant v. State*, 244 So. 2d 18, 20 (Miss. 1971) (citation omitted).

Jones, however, believes that the tape recording indicating that she had consumed a number of pills is the one and only element that elevates her conduct to the level of culpable negligence. Jones contends that the jury was swayed by the tape recording and would not have found her guilty had the jury not been permitted to hear it. We find this argument to be without merit. Jones, in her strong assertions that the jury was prejudiced, completely ignores the evidence against her. The Mississippi Supreme Court has long recognized that in considering vehicular homicide cases the issue is not whether the defendant was driving under the influence of drugs or liquor, but whether the defendant was guilty of culpable negligence. *Stever v. State*, 503 So. 2d 227, 228 (Miss. 1987) (citations omitted). In the present case, Jones equates the taking of the pills with culpable negligence. She fails to recognize that there is a distinction between the two. The Mississippi Supreme Court has held that merely being under the influence of an intoxicating substance is not enough to sustain a conviction of manslaughter. *Gant*, 244 So. 2d at 20. However, the court held in *Whitehurst v. State* that being under the influence of an intoxicating substance may "be considered as an element constituting gross and careless disregard for the value of human life." *Whitehurst v. State*, 540 So. 2d 1319, 1328 (Miss. 1989) (quoting *Gibson v. State*, 503 So. 2d 230, 233 (Miss. 1987)). The court has also held that being under the influence of an intoxicating substance is a factor in a manslaughter case if it can be further established that the intoxication proximately contributed both to the negligence and the resulting death. *Id.* at 1323.

Here, the issue of the pills was not further established but this does not, in any way, nullify the evidence against the Appellant. Whether the trial court erred by admitting the tape recording is an issue we need not reach due to the overwhelming evidence against the Appellant. However, if we were to determine that admission of the tape recording was error, which we do not determine, it would not warrant a reversal. As the State correctly argues, issues of relevancy and admissibility of evidence are largely within the discretion of the trial judge, and reversal may be had only where that discretion has been abused to such an extent that the accused has been prejudiced. *Parker v. State*, 606 So. 2d 1132, 1136 (Miss. 1992) (citing *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990)). When a judge is faced with an objection to improper evidence, he may do one of two things: (1) sustain the objection and admonish the jury accordingly; or (2) allow the evidence and give a cautionary instruction to the jury at the end of the trial. *Hudgins v. State*, 569 So. 2d 1206, 1209 (Miss. 1990). In the present case, the judge admitted the evidence but gave a limiting instruction to the jury that the State had not offered any proof that the Appellant was under the influence of drugs or alcohol at the time of the accident. In order for our system of justice to work properly, we must assume that a jury will act in conformance with all of the instructions. *Williams v. State*, 512 So. 2d

666, 671 (Miss. 1987) (our law presumes that the jury does as it is told); *Shoemaker v. State*, 502 So. 2d 1193, 1195 (Miss. 1987) (holding that jurors are presumed to follow the trial judge's instructions, and it would show insufficient confidence in the good sense and discretion of trial judges to hold otherwise). We therefore find that the jury was not unduly prejudiced by the admission of the tape recording.

> II. DID THE TRIAL COURT ERRONEOUSLY ADMIT TESTIMONY OFFERED BY BRENDA SANDERS, JERRY BEEMAN, TOM BURKE, AND JOHNNY ARMSTRONG CONCERNING JONES'S DRIVING BEHAVIOR THAT WAS TOO REMOTE IN PLACE TO BE PROBATIVE?

Jones contends that the testimony of Brenda Sanders, Jerry Beeman, Tom Burke, and Johnny Armstrong concerning the speed and behavior of a white automobile prior to the accident was inadmissible because the witnesses were too remote in place from the accident scene to be of any probative value. Jones argues that, under applicable case law, the witnesses' observations of the white automobile occurred too far from the accident scene to be conclusive of how she was driving at the moment the accident occurred. Jones contends that, in order for the observations of these witnesses to be probative, there must be a corroborating witness at the accident scene. She argues that the only witness at the scene, Norman Woolfolk, could offer no corroborating testimony as to her speed, and that Woolfolk's testimony that Jones was driving in the middle of the road was insufficient to support a finding of culpable negligence. Jones contends that the testimony of the four "remote" witnesses was damaging and prejudicial and should not have been admitted.

The State argues that "never in the reported case law of this State have so many people seen such reckless driving in such a short distance in such a brief period of time." The State contends that the Appellant's reckless driving was observed almost continuously at four different locations in a space of less than three miles, and that the testimony of these witnesses was sufficient to support a finding that Jones's reckless driving behavior continued from the moment she left "a flying" from her home as reported by her father until the fatal collision. We agree and find the case law cited by the State to be conclusive on the issue of remoteness of witnesses.

Jones is correct in that Mississippi case law has held that a witness may not testify to the speed and the manner in which a vehicle is driven if that witness is at a point distant or remote from the scene of the collision. *Gray v. State*, 427 So. 2d 1363, 1368 (Miss. 1983). However, the Mississippi Supreme Court has gone on to hold that "the most important factor affecting the admissibility of evidence concerning driver conduct before reaching an accident is the degree of probability that the conduct continued." *Hewlett v. State*, 607 So. 2d 1097, 1104 (Miss. 1992). In her brief, Jones cites cases that focus on the speed of the vehicle and not the recklessness of the driving. In the present case, the testimony elicited from the witnesses pertains to the recklessness of Jones's driving. Speed is not the primary focus of the State's case. The cases which Jones cites also describe the testimony of one witness at one location prior to the accident. In the present case, the State offered evidence of Jones's driving, as witnessed by six different people at five different locations during the short time period that it took Jones to drive from her home to the accident site: (1) The Appellant's father saw her leave his driveway "a flying"; (2) Sanders and Beeman saw Jones speed into the intersection

without stopping and almost collide with another car; (3) Sanders, Beeman, and Burke saw her as she sped away from this intersection, passing a car in a no passing zone; (4) Armstrong saw Jones approach and pass his car in a no passing zone while going up a hill and he also testified that Jones left the highway twice after passing his car; and (5) Woolfolk saw Jones approaching his car from the rear while in the middle of the highway in a no passing zone. Obviously, the testimony to which the Appellant objects is probative of whether Jones's driving was reckless, and whether it continued to be reckless from the time she left her driveway up until just seconds before the fatal collision with Ruth erford.

The Mississippi Supreme Court has held that "[t]he determination of whether evidence is too remote to be relevant is left to the discretion of the trial judge, and his decision will not be disturbed in the absence of clear proof of abuse of discretion." *Id.* (citing *Howard v. State*, 346 So. 2d 918, 920 (Miss. 1977); *Stewart v. State*, 226 So. 2d 911, 912 (Miss. 1969)). We find no abuse of discretion by the trial judge and therefore affirm.

> III. DID THE TRIAL COURT ERR BY FAILING TO GRANT JONES A MISTRIAL ON THE GROUND THAT THE STATE MADE IMPROPER REMARKS DURING CLOSING ARGUMENT?

Jones contends that the State made improper and inflammatory statements to the jury by referring to matters which were not in the record. Specifically, Jones objects to the following remarks made by the State during closing argument: "What about Joe Rutherford every morning he wakes up and his wife is not there? What about those fellow employees of Amy Rutherford? They can't see her when she's trying to help cancer patients. She's not there for them."

Jones contends that the suffering of the victim's husband, patients, and co-workers are facts not contained in the evidence and that in a criminal case, the suffering of the victim's family is irrelevant. While Jones's objection to the remarks was sustained, the defense argues that a mistrial should have been granted on the basis that the remarks inflamed and prejudiced the jury so as to prevent the Appellant from getting a fair trial.

The State contends that its remarks were nothing more than a limited and measured response to remarks made by defense counsel during its closing argument in which the defense made reference to facts not in evidence when he asked the jury to consider that the Appellant wakes up every morning and thinks about "this tragedy" or is kept awake at night by these thoughts. The State also argues that it preceded and followed its remarks by statements that sympathy is not evidence and cannot be considered. The State argues that its statements were intended to remove the effects of defense counsel's argument, not to influence the jury to convict.

The Mississippi Supreme Court has indicated that a prosecuting attorney is entitled to great latitude in framing his closing argument. *Dunaway v. State*, 551 So. 2d 162, 163 (Miss. 1989) (citations omitted). In *Taylor v. State*, the court held:

> The right of argument contemplates liberal freedom of speech and range of discussion confined only to bounds of logic and reason; and if counsel's argument is within the limits

of proper debate it is immaterial whether it is sound or unsound, or whether he employs wit, invective and illustration therein. Moreover, figurative speech is legitimate if there is evidence on which it may be founded. Exaggerated statements and hasty observations are often made in the heat of debate, which, although not legitimate, are generally disregarded by the court, because in its opinion they are harmless.

*Taylor v. State*, 672 So. 2d 1246, 1269 (Miss. 1996) (quoting *Monk v. State*, 532 So. 2d 592, 601). The test to determine if an improper argument by a prosecutor requires reversal is "whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." *Id.* (citations omitted). In the present case, we must agree with the trial judge in that it seems unlikely that the three sentences to which Jones is objecting created unjust prejudice against the accused. As the State argued in its brief, the remarks were preceded and followed by statements indicating that sympathy could not be considered as evidence. Also, a review of the record indicates that the judge instructed the jury prior to closing arguments that counsels' remarks were not to be considered as evidence, and that any such remarks having no basis in evidence should be disregarded. Furthermore, the Mississippi Supreme Court has held that the circuit judge is in the best position to determine whether an objectionable argument may result in a decision influenced by prejudice. *Dunaway*, 551 So. 2d at 164. Therefore, giving proper deference to the trial judge, and in light of the instructions and the overwhelming evidence against the Appellant, we find that the State's remarks were harmless and do not warrant a reversal.

> IV. DID THE TRIAL COURT ERR IN GRANTING THE COURT'S INSTRUCTION C-9 AND IN REFUSING THE DEFENDANT'S INSTRUCTION D-5-A?

This allegation of error is a continuation of the Appellant's argument that the tape recorded statement of the her father regarding the taking of pills was irrelevant and prejudicial. Jones contends that the court realized that the tape recording could lead to a verdict influenced by prejudice and therefore attempted to remedy the error by giving the following cautionary instruction:

> Members of the jury, you heard testimony by way of playing the 911 tape that the defendant took a great number of pills. There's no other evidence in this record to indicate to you that the defendant did, in fact, take a great number of pills, the type of pills, the effect, if any, upon the defendant and her behavior. There is no proof before you that the defendant was under the influence of drugs or alcohol at the time she is alleged to have been driving the white Oldsmobile.

Jones argues that the above instruction did not cure the undue prejudicial effects of the 911 tape in that it did not tell the jury to disregard the taking of the pills entirely as Jones's proposed instruction would have done. Jones proposed the following cautionary instruction:

> The Court instructs the jury as a matter of law that you shall not consider any evidence or testimony concerning the alleged consumption of any "pills" against the Defendant and you shall disregard any such evidence in your deliberations.

Jones contends that the taking of the pills was crucial to the State's conviction which is evidenced by the fact that the State made reference to the pills during opening and closing arguments, and that the jury asked that the tape be replayed during its deliberations. Jones argues that the instruction proposed by the defense would have cured the prejudicial effect of the 911 tape and would have allowed the jury to consider evidence which would only support a verdict of simple negligence.

This Court, earlier in this opinion, addressed the issue of prejudice as alleged by the Appellant and sees no need to revisit this issue. However, we will briefly address the issue of granting and denying instructions. Mississippi law allows the trial judge to instruct the jury upon principles of law applicable to the case either at the request of a party, Miss. Code Ann. § 99-17-35 (1972), or on the court's own motion, *Newell v. State*, 308 So. 2d 71, 78 (Miss. 1975); *see also* Unif. Crim. R. Cir. Ct. Prac. 5.03. The Mississippi Supreme Court has held that the failure of a court to give a requested instruction is not grounds for reversal if the jury was "fairly, fully and accurately instructed on the law governing the case." *Smith v. State*, 572 So. 2d 847, 848 (Miss. 1990) (citation omitted); *see also Murphy v. State*, 566 So. 2d 1201, 1206 (Miss. 1990) (holding that the trial court may refuse an instruction which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions); *Calhoun v. State*, 526 So. 2d 531, 533 (Miss. 1988) (holding that a trial court is not required to instruct a jury over and over on the same point of law even though some variations are used in different instructions).

In the present case, the court's instruction C-9 instructed the jury that the State had not presented any evidence, beyond the statements contained in the tape recording, that the Appellant had consumed any pills. Instruction C-9 further emphasized that there was no proof that the Appellant was under the influence of drugs or alcohol at the time of the accident. We believe that the court's instruction sufficiently cautioned the jury, and find that the trial court did not abuse its discretion in refusing the Appellant's instruction. We find that this issue is without merit.

> V. DID THE TRIAL COURT ERR IN DENYING JONES'S MOTION FOR DIRECTED VERDICT AND SUBSEQUENT MOTION FOR JNOV? DID THE TRIAL COURT ERR IN DENYING JONES'S MOTION FOR A NEW TRIAL?

Jones contends that the State failed to prove the necessary elements to support a conviction of culpably negligent manslaughter. She also contends that the verdict was against the overwhelming weight of the evidence. Jones argues that the evidence presented by the State would only establish simple negligence, at best. Jones continues to pursue her arguments as presented in the first two issues concerning the prejudicial effect of the tape recording and remoteness of witnesses.

Here, as in the previous issues, we find Jones's argument to be without merit. The Mississippi Supreme Court has stated that the standard of review regarding a challenge of the sufficiency of the

evidence is well established:

> [T]he [sufficiency of the] evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Jones's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Jones v. State*, 669 So. 2d 1383, 1388 (Miss. 1995) (quoting *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)); *see also Tait v. State*, 669 So. 2d 85, 88 (Miss. 1996); *Williams v. State*, 667 So. 2d 15, 23 (Miss. 1996). In the present case, to convict Jones of manslaughter by culpable negligence, the State must prove, beyond a reasonable doubt, "guilt of such gross negligence on the occasion complained of as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness." *Evans v. State*, 562 So. 2d 91, 94 (Miss. 1990) (citations omitted). Taken in the light most favorable to the verdict, the State's proof, together with all reasonable inferences flowing therefrom, established that Jones was operating her motor vehicle in a reckless manner immediately prior to the collision with the victim, Amy Rutherford. Witnesses testified that Jones was driving at a high rate of speed, that she skidded through an intersection barely missing another car, that she passed in a no passing zone on two occasions, that her vehicle left the highway at least twice, and that she was driving in the middle of the road. The witnesses testified that they perceived Jones driving in this reckless manner just minutes prior to the Appellant ramming into the rear of Norman Woolfolk's vehicle and then colliding with Amy Rutherford. A reasonable, hypothetical juror could have certainly concluded that Jones's reckless driving contributed to the death of Amy Rutherford.

Pertaining to the issue of the weight of the evidence, the Mississippi Supreme Court has held that "[t]he jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed." *McClain*, 625 So. 2d 774, 781 (Miss. 1993) (citations omitted); *see also Burrell v. State*, 613 So. 2d 1186, 1192 (Miss. 1993) (witness credibility and weight of conflicting testimony are left to the jury); *Kelly v. State*, 553 So. 2d 517, 522 (Miss. 1989) (witness credibility issues are to be left solely to the province of the jury). Furthermore, "the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion." *McClain*, 625 So. 2d at 781 (citing *Wetz v. State*, 503 So. 2d 803, 807-08 (Miss. 1987)). The decision to grant a new trial "rest[s] in the sound discretion of the trial court, and the motion [for a new trial based on the weight of the evidence] should not be granted except to prevent an unconscionable injustice." *Id.* This Court will reverse only for abuse of discretion, and on review will accept as true all evidence favorable to the State. *Id.*

In the present case, the jury heard the witnesses and the evidence presented by the State. As discussed previously, the State provided testimony of various witnesses, police officers and experts.

Jones chose not to put on any witnesses and rested after the trial court denied her motion for a directed verdict and her motion for a mistrial. The testimony was clearly for the jury to evaluate. The jury's decision to believe the State's evidence and witnesses was well within its discretion. Moreover, the jury was well within its power to weigh the evidence and the credibility of the witnesses' testimony and to convict Jones. The trial court did not abuse its discretion by refusing to grant Jones a new trial based on the weight of the evidence. The jury verdict was not so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to promote an unconscionable injustice. The trial court properly denied Jones's motion for a new trial.

**THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF CULPABLE NEGLIGENT MANSLAUGHTER AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE LAST SEVEN (7) YEARS SUSPENDED PENDING THE FUTURE GOOD BEHAVIOR OF THE APPELLANT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO DESOTO COUNTY.**

**FRAISER, C.J., BRIDGES AND THOMAS, P.JJ., BARBER, COLEMAN, DIAZ, KING, McMILLIN, AND SOUTHWICK, JJ., CONCUR.**