16 So.3d 699 (2008)
Irby Matthew TATE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00670-COA.
Court of Appeals of Mississippi.
December 16, 2008.
Rehearing Denied May 26, 2009.
Certiorari Denied September 3, 2009.
*700 Beth Burton, Mark Ivey Burton, Kosciusko, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Jackson, attorney for appellee.
EN BANC.
BARNES, J., for the Court.
¶ 1. This case comes on appeal from the Circuit Court of Holmes County on Irby Matthew Tate's conviction of culpable negligence manslaughter and sentence of twenty years in the custody of the Mississippi Department of Corrections  ten years to serve, five years of supervised probation, and five years of post-release supervision. Tate was also ordered to receive treatment for drug and alcohol abuse while in custody. Finding the evidence insufficient to establish "negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life,"[1] we reverse the conviction and render judgment in favor of Tate.

FACTS
¶ 2. On the afternoon of October 9, 2005, Tate, a twenty-one-year-old male, was driving his 2004 Ford F-150 truck west on Castalian Springs Road, in Holmes County, Mississippi. His wife, Brandi Tate, was a passenger in the truck. At the same time, Yvonne Brooks, a forty-eight-year old female, was traveling east on the same road, driving a 1992 Chevrolet Lumina sedan. According to witnesses, Brooks was driving extremely slowly, and she was not wearing a seat belt.[2] While navigating a curve in the two-lane road, Tate's vehicle veered across the center line and collided with Brooks's car, which resulted in Brooks's immediate death. Two motorists, *701 Larry McGee and Shirley Greer, were traveling behind Brooks and stopped to assist. McGee checked on the Tates and Brooks, and then he went to call 911; the police and ambulance arrived soon thereafter. Mrs. Tate received minor injuries and was transported by ambulance to the local hospital for treatment. Tate accompanied his wife to the hospital, riding in the front of the ambulance. After remaining at the hospital for approximately one hour, Tate went home with his father. A blood test was not performed on Tate until the following day (twenty-five hours later). The blood test revealed no alcohol in Tate's system.[3]
¶ 3. While still at the scene of the accident, Greer told the deputy she heard a loud thud in the bushes by the roadside after the crash. Upon investigation, the deputy recovered a cooler with five unopened cans of beer inside. There were also two empty bottles of beer in "huggies" on the side of the road.
¶ 4. Tate was arrested on October 10, 2005, and indicted on culpable negligence manslaughter pursuant to Mississippi Code Annotated section 97-3-47 (Rev. 2004). He was convicted after a jury trial on February 21-22, 2007. It is from this conviction that he now appeals.

I. Whether the trial court erred in its denial of Tate's motions for a directed verdict and his motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, as the verdict was against the overwhelming weight of the evidence.
¶ 5. During trial, at the close of the State's case-in-chief, Tate made a motion for a directed verdict, which was denied. Tate renewed his motion for a directed verdict at the close of trial, which was also denied. On March 5, 2007, Tate filed a motion for a JNOV or, in the alternative, for a new trial. That motion was also denied.
¶ 6. The review of a denial of a motion for a directed verdict and a JNOV is well established. A denial of a motion for a directed verdict is reviewed under a de novo standard. Williams v. State, 971 So.2d 581, 586(¶ 8) (Miss.2007). In Williams, the supreme court held:
The critical inquiry in deciding whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment not withstanding the verdict (JNOV) is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged and that he did so under such circumstances that every element of the offense existed. If the evidence fails to meet this test, it is insufficient to support a conviction. The legal sufficiency of the evidence is viewed in the light most favorable to the State.
Id. (internal citations omitted). Therefore, we must review the record to determine "whether the evidence is of such quality that reasonable and fairminded jurors in the exercise of fair and impartial judgment might reach different conclusions." Gilmer v. State, 955 So.2d 829, 833(¶ 7) (Miss. 2007).
¶ 7. Tate was convicted under Mississippi Code Annotated section 97-3-47 (Rev.2004) which states: "Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter." (Emphasis added). "[C]ulpable negligence is defined as `the conscious and wanton or reckless disregard of the probabilities of *702 fatal consequences to others as a result of the wilful creation of an unreasonable risk thereof.'" Evans v. State, 562 So.2d 91, 94 (Miss.1990) (quoting Smith v. State, 197 Miss. 802, 817, 20 So.2d 701, 705 (1945)). "The only requirement is recklessness or a willful disregard for an unreasonable risk." Shumpert v. State, 935 So.2d 962, 967(¶ 14) (Miss.2006) (citing Campbell v. State, 285 So.2d 891, 893 (Miss.1973)). Specifically, the Mississippi Supreme Court has stated:
The term culpable negligence should be construed to mean a negligence of a higher degree than that which in civil cases is held to be gross negligence, and must be a negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and that this shall be so clearly evidenced as to place it beyond every reasonable doubt.
Conley, 790 So.2d at 793(¶70) (quoting Grinnell v. State, 230 So.2d 555, 558 (Miss. 1970)).
¶ 8. The prosecution attempted to show that Tate was driving excessively fast and exhibiting reckless behavior; however, no evidence was presented at trial that Tate was exceeding the posted speed limit. The only evidence presented that Tate might have been speeding was that of McGee, an eyewitness, who testified that he (McGee) was driving at a very low rate of speed behind Brooks, and that Tate was traveling at "a high rate of speed." McGee, who was a frequent traveler down that particular road, also testified that it "doesn't take much to veer over in that curve." The prosecution's accident reconstructionist, Dennis Weaver, implied in his testimony that Tate was speeding, but he noted that this conclusion was based solely on the truck's inability to negotiate the curve. Weaver admitted that he had no evidence to determine the speed of either vehicle.
¶ 9. The prosecution also argued that, based on the testimony of their expert witness, Tate must have been "driving on the wrong side of the road" and hit Brooks while she was on the shoulder of the road. This claim is based on the location of tire gouge marks found at the scene of the crash. However, direct testimony by an eyewitness, McGee, disputed this claim. McGee testified:
[Tate] was going with the curve at first, and just seemed like all of a sudden, you know, like just veered off. ... The truck was in the proper lane headed the opposite direction, but the only time he crossed over in the other lane is when he left in the curve.
McGee also testified that the accident occurred on the roadway, and Brooks was knocked off the highway due to the impact of the crash. Therefore, the direct evidence clearly demonstrated that Tate, up until the moments preceding the crash, was driving in the correct lane regardless of where the impact occurred.[4]
¶ 10. Another claim by the prosecution was that Tate was somehow impaired, making it dangerous for him to be operating a motor vehicle. However, no witness testified that Tate appeared to be intoxicated. Greer and the ambulance driver, who were both in close proximity to Tate after the accident, stated that they did not smell alcohol on Tate. Greer testified that Tate came up to her in shock, and she put her arm around him. Only one witness, a deputy, testified that there was a smell of alcohol coming from the truck and that Tate looked "slurry"; however, the deputy *703 also admitted that he did not smell alcohol on Tate, even though he got close to him, and that "he could have been nervous from the accident." Additionally, the blood test of Tate, which was admittedly twenty-five hours after the accident, showed no alcohol in his system.[5]
¶ 11. Regarding the ice chest and beer found at the scene, no evidence was presented to show that they belonged to Tate. Even if the jury could infer from Greer's statement that Tate threw the cooler into the bushes, the five cans of beer in the cooler were unopened. Holmes is not a "dry" county; the possession of them was not illegal. Nor did the evidence show that the two empty bottles of beer found by the side of the road were attributable to Tate. There was no DNA evidence that linked those items to Tate. Although the State commented in its opening arguments that the five cans and the two bottles found at the scene were the same brand, we are unable to confirm this allegation based on the evidence in the record. None of the witnesses who saw the beer testified to this effect, and the photographic evidence is unclear. We find that the evidence presented by State failed to show that Tate was in any way impaired. He answered questions appropriately from the deputy and ambulance drivers. Greer said that Tate appeared in shock and disoriented, but again, there was no evidence that this behavior was attributable to the consumption of alcohol.
¶ 12. Although the prosecution argued at trial that culpable negligence means that Tate simply needed to be "conscious" or "awake at the time he was driving," and by getting into the other lane of traffic he created the "probability of an unreasonable risk of injury," we find more is required to constitute culpable negligence. In Gant v. State, 244 So.2d 18, 20 (Miss. 1971), the Mississippi Supreme Court found that evidence of the defendant's automobile weaving from side to side on the road and the fact that he drove his automobile on the side of the road occupied by the oncoming truck driven by the deceased, coupled with evidence of an almost empty pint bottle of bourbon whiskey found at defendant's feet, was insufficient to establish the degree of negligence for culpable negligence. Further, in Evans, the supreme court reversed a finding of culpable negligence when the State failed to prove that the defendant was driving recklessly or unlawfully when his car collided with the rear of victim's pickup truck, although the defendant was driving while intoxicated. Evans, 562 So.2d at 96.
¶ 13. The supreme court has held in these cases that culpable negligence requires a higher level of negligence. While many of the Mississippi culpable negligence cases have involved the use of alcohol by the defendant, operating an automobile "while under the influence" is only a factor "`indicating criminally culpable negligence if the influence of intoxicants proximately contributed both to the negligence of the defendant and to the resulting death.'" Ramage v. State, 914 So.2d 274, 277(¶ 6) (Miss.Ct.App.2005) (quoting Hopson v. State, 615 So.2d 576, 578 (Miss. 1993)). "While simple negligence coupled with proof of intoxicated driving will sustain a conviction for aggravated DUI, culpable negligence manslaughter requires a greater showing[.]" Ramage, 914 So.2d at 276-77 (¶ 6) (internal citation omitted) (emphasis added). "[D]riving under the influence is a crime in and of itself [and] does not by itself constitute culpable negligence." Id. (citations omitted). Compare Gandy v. State, 373 So.2d 1042, 1046 (Miss.1979) (culpable negligence found *704 where defendant drove into the wrong lane of traffic on a straight stretch of road with an unobstructed view, coupled with abundant evidence of the defendant's intoxication); and Gibson v. State, 503 So.2d 230, 233 (Miss.1987) (finding of culpable negligence warranted where decedent's vehicle, which was parked wholly off the highway and displaying its taillights, was struck at its rear by the defendant's automobile, which had eased off the road along a straight and level stretch of highway, and where there was evidence that defendant had a .19% level of blood alcohol).
¶ 14. Based upon our review of the cases cited above, we find no circumstances where the Mississippi Supreme Court has allowed a culpable negligence conviction to stand under circumstances similar to those presented in this case. In Stever v. State, 503 So.2d 227 (Miss.1987), the supreme court reversed and rendered a verdict of culpable negligence where there was no evidence that the defendant was speeding or driving recklessly, nor impaired by alcohol even though the defendant had admitted to drinking beer earlier that day, and his blood alcohol was .217. Id. at 228-29. As in Stever, there was no evidence presented at trial that Tate was speeding or driving recklessly, nor was it found that he was impaired. However, unlike the defendant in Stever, there was no evidence that Tate had been drinking on the day of the crash. All the evidence showed was that Tate, who may have had a cooler of beer and two open beers in his vehicle, lost control of his vehicle while coming through the curve and crossed into Brooks's lane, thereby causing her death. We find that the State failed to show that Tate's actions rose the level of "wanton or reckless conduct," or that Tate was negligent to such a degree that he was "totally indifferent to the safety of human life." See id.
¶ 15. As the evidence presented at trial did not prove that every element of the offense existed, and that the trial court erred in its denial of Tate's motion for a JNOV, we must reverse and render as the facts, "viewed in [the] light [favorable to the State], point so overwhelmingly in favor of [Tate] that reasonable men could not have arrived at a guilty verdict." Stephens v. State, 911 So.2d 424, 436(¶ 41) (Miss.2005).
¶ 16. Based on the foregoing, we find it unnecessary to consider Tate's remaining points of error which have been rendered moot.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HOLMES COUNTY.
KING, C.J., LEE, P.J., CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.
CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P.J., AND IRVING, J.
CARLTON, J., Dissenting:
¶ 18. Because I find sufficient evidence in the record to support Tate's conviction, I respectfully dissent. This Court has a limited standard of review on challenges to the sufficiency of the evidence. We will not disturb a circuit court judge's decision to deny a motion for a directed verdict or a judgment notwithstanding the verdict (JNOV) unless the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." Hughes v. State, 983 So.2d 270, 275-76(¶ 10) (Miss.2008) (quoting Brown v. State, 965 So.2d 1023, *705 1030(¶ 25) (Miss.2007)). When reviewing "whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows `beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" Bush v. State, 895 So.2d 836, 843(¶ 16).
¶ 19. A review of the sufficiency of the evidence does not require this Court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (internal citations omitted).
¶ 20. If the facts and inferences presented at trial "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," this Court must reverse. Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)). However, "if a review of the evidence reveals that it is of such quality and weight that, `having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient." Bush, 895 So.2d at 843(¶ 16) (quoting Edwards, 469 So.2d at 70).
¶ 21. After examining the evidence presented to the jury in the light most favorable to the prosecution, I find that a rational trier of fact could have determined that Tate was guilty of culpable negligence manslaughter. The jury considered evidence of Tate's speeding, failure to maintain control of his vehicle in a curve, and evidence of alcohol consumption, including his appearing "slurry" as if he had been drinking. McGee, who witnessed the collision, testified that he was himself traveling at a very low rate of speed, while he observed Tate traveling at a high rate of speed. The State's accident re-constructionist implied that Tate was speeding, admitting that his conclusion was based solely on Tate's inability to maneuver through the curve.
¶ 22. Regarding Tate's impairment at the time of the accident, the State presented evidence for the jury to consider. Though Greer and the ambulance driver testified that they did not smell alcohol on Tate, a deputy sheriff at the scene testified that he smelled alcohol coming from the truck, though not on Tate, and that Tate looked "slurry, looking more like somebody [who] had been drinking." Though the blood-alcohol test revealed no alcohol in Tate's system, the test was not performed until twenty-five hours after the accident occurred.
¶ 23. Furthermore, the ice chest containing beer found at the scene in the bushes and the two empty beer bottles close by, still in their "huggies," were linked to Tate circumstantially in time and proximity to the scene. Greer recalled that she heard a "boom" as if something had been thrown into the bushes after the wreck. This circumstantial evidence of consumption of alcohol was presented to the jury for consideration along with the other evidence of speeding and failure to maintain control of the vehicle in making *706 the curve. See Holloway v. State, 860 So.2d 1244, 1246-47(¶ 12) (Miss.Ct.App. 2003) (holding that "[a] person may be arrested, tried, and convicted of operating a motor vehicle while under the influence of an intoxicating liquor even if there is no eyewitness presented who viewed the defendant operating the vehicle, provided there is sufficient evidence") (citing Horn v. State, 825 So.2d 725, 726-27 (¶¶ 6-8) (Miss.Ct.App.2002)).
¶ 24. Thus, considering the evidence presented to the jury in the light most favorable to the State, I find sufficient evidence to support the jury's verdict. This Court "will not re-weigh the evidence, as matters regarding the weight and credibility of the evidence are to be resolved by the jury." Holloway, 860 So.2d at 1246(¶ 9) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). The jury in Tate's case had before it the conflicting evidence and still returned a guilty verdict. See also Goldman v. State, 406 So.2d 816, 819-20 (Miss.1981) (upheld a culpable negligence manslaughter conviction and noted that "we must consider as true all testimony offered by the prosecution, together with reasonable inferences, and if that evidence will support a verdict of guilty, the question is for the jury to determine.") Therefore, I respectfully dissent from the majority's opinion and would affirm the circuit court, as the jury's verdict was a reasonable conclusion in light of the evidence presented.
MYERS, P.J., AND IRVING, J., JOIN THIS SEPARATE OPINION.
NOTES
[1] Conley v. State, 790 So.2d 773, 793(¶ 70) (Miss.2001).
[2] Toxicology reports later revealed that Brooks had cocaine present in her system at the time of the accident. Cocaine was also found in her vehicle.
[3] There were traces of marijuana, but the time of ingestion could not be determined.
[4] We do find it ironic that the prosecution asserted at trial that no circumstantial-evidence instruction was warranted due to eyewitness testimony, yet the prosecution based its proof of Tate's hitting Brooks's vehicle on the shoulder of the road purely on circumstantial evidence, which was clearly refuted by that very eyewitness.
[5] Mrs. Tate was not given a blood-alcohol test.